[File No. 7061]

GRAND FORKS BUILDING AND DEVELOPMENT COMPANY, Appellant, v. IMPLEMENT DEALERS MUTUAL FIRE INSURANCE COMPANY, Respondent.

GRAND FORKS BUILDING AND DEVELOPMENT COMPANY, Appellant, v. IOWA HARDWARE MUTUAL INSURANCE COMPANY; Implement Dealers Mutual Fire Insurance Company; and The Ohio Hardware Mutual Insurance Company, Respondents.

(31 NW2d 495)

Opinion filed March 29, 1948

*Phillip R. Bangs* and *Samuel P. Halpern,* for appellant.

*Day, Lundberg & Stokes,* for respondent.

NUESSLE, J. The plaintiff is a domestic corporation. On December 11, 1944, it owned a three story brick building in Grand Forks which was damaged by a fire on that day. The building was insured under two policies of insurance. One of these policies was issued by the defendant, Implement Dealers Mutual Fire Insurance Company. The other, a joint policy, was issued by the Iowa Hardware Mutual Insurance Company, the Implement Dealers Mutual Fire Insurance Company, and The Ohio Hardware Mutual Insurance Company.

The plaintiff demanded payment on account of the loss suffered because of the fire, but the insurers refused to pay, as it was impossible to agree upon the amount of the damage. Whereupon the plaintiff brought actions on the two policies. When the cases were called for trial, the court, the parties consenting, ordered them to be consolidated and tried as one case. This was done. The trial was had to a jury which found for the plaintiff. The plaintiff, however, was not satisfied with the amount of the verdict. Judgment was entered on the verdict and thereafter plaintiff moved for a new trial. The motion was denied. Thereupon plaintiff perfected this appeal from the judgment and from the order denying its motion.

Plaintiff grounds its appeal on errors of law occurring during the course of the trial, particularly, on rulings on objections to the admission of evidence; error in the instructions given to the jury; the insufficiency of the evidence to warrant the verdict; and error of the court in denying the motion for a new trial.

Plaintiff's building is a three story brick structure. The fire occurred in the buildings immediately north of it and they were totally destroyed. They were separated from the plaintiff's building by a brick party wall some fifty feet in height. Plaintiff's building was more or less damaged by the fire, but was not destroyed. On the trial of the case plaintiff offered proof of

numerous items of damage. Many of these were admitted by the defendants. The chief item, however, claimed by the plaintiff was on account of injury done to the party wall. While the defendants conceded that some damage had been done to the wall, there was a wide difference of opinion as to the amount thereof.

As we have stated, the chief difference between the parties was as to the extent and amount of damage to the party wall—the north wall of plaintiff's building. Witnesses were called who testified at great length in support of the contentions of the several parties. One in particular, Walter A. Wheeler, an experienced actual and consulting engineer, was called by the defendants. The fire occurred on December 11, 1944. After the defendant companies were notified of plaintiff's loss, they contacted a firm of insurance adjustors who, in August 1945, sent Wheeler to the scene of the fire to investigate and report. He made a very thorough examination and submitted a report stating the facts as he found them to be, together with his conclusions as to the extent of the damage resulting from the fire. He made measurements and prepared a sketch showing the elevation of the party wall and a plan of the top of the wall with dimensions thereof written on the plan. A blueprint of this was made and attached to the report to the adjustors. The trial of the case was had in June, 1946. Wheeler again inspected the plaintiff's building at that time and refreshed his memory as to the damage that had been done to it by the fire. When called as a witness he testified fully as to all of the several items of damage that he had found describing each item and stating his conclusions as to the character and extent of the damage done. Thereafter, he identified the report he had made to the insurance adjustors on the occasion of his first inspection of the premises as having been made by him at that time. This report was marked Exhibit R. He also identified the blueprint attached thereto. This was marked as Exhibit Q. The defendants offered these exhibits in evidence, as they said, in explanation of his testimony. The plaintiff objected to their admission on the grounds that they were reports made to the adjustors, that they were purely hear-

say and were, therefore, incompetent, and that, if admitted, they would go to the jury as written testimony.

Exhibit R was a detailed written statement. It consisted of several closely typewritten pages. It was not consulted or referred to by the witness Wheeler during the course of his examination, or used as a memorandum to refresh his memory. Exhibit Q was attached to and constituted a part of the report. It consisted of a blueprint of a sketch of the wall together with written statements explanatory of the sketch. The witness had not referred to the exhibit during the course of his examination in chief, or used it is a memorandum to refresh his memory. On examination, after objection to its admission, he testified that he had made it and that it was accurate. But no testimony was offered explaining the sketch to the jury.

We are of the opinion that these exhibits were erroneously received. The trial court himself, in his memorandum opinion, states that there probably was error in their reception, but that it was not prejudicial. The exhibits were written by one not a party to the action. He was not then under oath. There was no opportunity for cross-examination. They clearly were subject to the hearsay rule, which Professor Wigmore defines as

"That rule which prohibits the use of a person's assertion, as equivalent to testimony of the fact asserted, unless the assertor is brought to testify in court on the stand, where he may be probed and cross-examined as to the grounds of his assertion and of his qualifications to make it." See 5 Wigmore, on Evidence, 3d ed, §§ 1361 and 1364.

The rule excluding hearsay applies to written as well as oral statements. See 20 Am Jur 403 et seq., Evidence; CJS 930 et seq.; 5 Wigmore, Evidence, 3d ed § 1363. But the defendants contend that the exhibits were properly offered and received in explanation of the oral testimony of the witness given on the stand prior to the offer, since he had there "testified fully with reference to every part of it and was there for cross-examination, and certainly was cross-examined very vigorously." This contention, however, cannot be sustained under the authorities. Generally, proof of previous statements by a witness consistent

with and corroborative of his testimony, is incompetent and inadmissible unless and until some attack on his credibility has been made. 28 RCL 652 et seq. Here there had been no challenge to the credibility of the witness. He was present and had testified. He was a specialist and an expert. He was neither ignorant nor illiterate. If his testimony required explanation he should have made it himself, then and there. Even if the exhibits had been admissible, they should not have been sent out with the jury. Though they had been in the form of depositions duly taken, nevertheless, they would not have been usable for the reason that the witness was present in court and had testified. See §§ 31–0501 and 31–0518, ND Rev Code 1943. And even though they had been usable it would not have been proper to send them out as exhibits with the jury when the latter retired. See § 28–1417, ND Rev Code 1943. And many courts have held to the same effect in the absence of statutory prohibition. See 64 CJ 1027 et seq.; 5 Wigmore, Evidence 3d ed § 1415. The reason for this rule was quaintly stated in Alexander v. Jameson (1812) 5 Binn (Pa) 238,

"These (depositions) have been withheld, because it has been thought unequal, that while the jury were not permitted to call the witnesses before them who had been examined in court, they should take with them the depositions of other witnesses not examined in court",
and again,

"It would not be fair and equal, that the oaths of witnesses reduced to writing on one side, should be permitted to go out, and witnesses examined viva voce on the other side, should be prohibited from accompanying the jury."

See also Rawson v. Curtiss, 19 Ill 456, 480.

It is true that Wheeler had testified before the jury and the exhibits were largely repetitious of his testimony, but they also contained statements of fact and conclusions to which he did not testify. They were written well and convincingly. As we have said above, they were not competent to explain the testimony given by the witness before the jury. Certainly, when sent out with the jury they would, if read, tend greatly to emphasize his

testimony, and just as certainly they would have probative effect. If this were not so, why were they offered in evidence? We cannot avoid the conclusion that not only was the court's ruling erroneous, but that the error cannot have been other than prejudicial.

Numerous other errors were assigned, but in view of our holding above set forth, it is unnecessary to consider them here.

The judgment is reversed and a new trial ordered.

CHRISTIANSON, Ch. J., and BURKE, J., and GRONNA, District Judge, concur.

BURR and MORRIS, JJ., did not participate.