320 F.2d 26
 W. C. MOORHEAD, Jr., d/b/a Moorhead Freight Line, and the
Great American Insurance Company, a New York
corporation, Appellants,
v.
The STEARNS-ROGER MANUFACTURING COMPANY a Colorado
corporation, Appellee.
The STEARNS-ROGER MANUFACTURING COMPANY, a Colorado
corporation, Cross-Appellant,
v.
W. C. MOORHEAD, Jr., d/b/a Moorhead Freight Line; and the
Great American Insurance Company, a New York
corporation, Cross-Appellees.
 Nos. 7214, 7215.
 United States Court of Appeals Tenth Circuit.
 Aug. 7, 1963.
 
 1
 David R. Gallagher, Albuquerque, N.M., for appellants and cross-appellees. (McAtee, Toulouse, Marchiondo, Ruud & Gallagher, Albuquerque, N.M., were with him on the brief.)
 
 
 2
 Dwight K. Shellman, Jr., Denver, Colo., for appellee and cross-appellant. (Holland & Hart, Denver, Colo., were with him on the brief.)
 
 
 3
 Before MURRAH, Chief Judge, LEWIS, Circuit Judge, and DOYLE, District judge.
 
 
 4
 DOYLE, District Judge.
 
 
 5
 The Stearns-Roger Manufacturing Company recovered judgment in the amount of $73,111.63 against appellants W. C. Moorhead, Jr., and The Great American Insurance Company who now seek reversal. The case involved damage to an electrical transformer, the property of Public Service Company of Albuquerque, which was being transported on Moorhead's equipment. Great American was the insurer.
 
 
 6
 Stearns-Roger had contracted with the Public Service Company, an electrical utility, to install the transformer and to do the necessary construction work incident thereto. This was at the Gamerco substation near Gallup, New Mexico. Moorhead, who owned and operated a heavy hauling business in Gallup, New Mexico, applied to Stearns-Roger for heavy hauling business in connection with the project.
 
 
 7
 On April 10, 1960, one J. L. Wallace, General Superintendent for Stearns-Roger, called Moorhead and requested that he supply a truck and driver for the transportation of the transformer from a rail siding to the place of installation. Moorhead was told that the transformer weighed approximately fifty tons but that it would be loaded and unloaded by employees of Stearns- Roger. On April 11, 1960, Moorhead supplied a thirty-five ton lowboy and driver for the transportation of the transformer. Whether Moorhead was then acting as a carrier or had by this particular arrangement leased the equipment to Stearns-Roger, is in question. If it was a lease, Stearns-Roger could recover only if the evidence established negligence or fault on the part of Moorhead. If, on the other hand, Moorhead was then acting as a carrier, his liability would exist regardless of fault on his part.
 
 
 8
 The evidence discloses that there were two possible routes from the rail siding to the cement pad where the transformer was to be put down. The foreman of Stearns-Roger, together with the driver for Moorhead, traveled the two routes and finally Moorhead's driver decided that the longer route which passed over State Highway No. 66 would be the better one to follow.[1] The transformer was loaded onto the lowboy and was moved over the routh which had been selected. When it approached the cement pad where it was to have been installed, the trailer passed over a wooden culvert which collapsed causing the trailer to tip and causing the trailer and transformer former to upset. The amount of damage claimed in the complaint was $75,000.00; however, at the trial it was stipulated that the damage to the transformer was $73,111.63.
 
 
 9
 Under its contract with the Public Service Company Stearns-Roger was responsible for the transformer from the time that it arrived at the rail head until it was installed on the cement pad which Stearns-Roger had prepared for its installation, and when Public Service Company demanded reimbursement Stearns-Roger paid and took an assignment from Public Service.
 
 
 10
 It is not disputed that Moorhead was ordinarily a common or public carrier. He held himself out to the public as such, being the holder of a Certificate of Convenience and Necessity issued by the New Mexico State Corporation Commission. He maintains that the present arrangement was special. Stearns-Roger was not a utility. During the course of the actual movement of the transformer Moorhead's driver was in charge of the vehicle; however, employees of Stearns-Roger assisted the driver by giving hand signals and stopping traffic along the way.
 
 
 11
 The trial court found that Moorhead was a common carrier of heavy equipment and that he was on this occasion acting as such. Although the trial court also found that neither Moorhead nor Stearns-Roger was negligent, it imposed liability against Moorhead on the ground that as a public carrier his liability was that of insurer.
 
 
 12
 In seeking reversal Moorhead contends that the trial court erred in:
 
 
 13
 1) Holding that the contract between the parties was a contract of common carriage and in refusing to hold that it was one of rental of equipment and driver, and in concluding that his liability was absolute;
 
 
 14
 2) Excluding testimony of Moorhead as to private instructions which he gave to his driver prior to the undertaking;
 
 
 15
 3) Failing to construe properly and to give full effect to the insurance policy of Moorhead, and particularly the co-insurance clause contained therein.
 
 
 16
 On cross-appeal, Stearns-Roger in turn urges that:
 
 
 17
 The trial court erred in refusing to grant interest from the date of the injury to the date of judgment; and that The Great American Insurance Company should have been held independently liable for interest upon the insurance policy.
 
 
 18
 1. The public carrier issue.
 
 
 19
 It is axiomatic that the trial court's findings of fact are not to be set aside unless they are clearly erroneous.[2] There is ample evidence in the record establishing that Moorhead held himself out to be a common carrier by advertising and otherwise. Moreover, he was the holder of a Certificate of Convenience and Necessity in accordance with New Mexico statutes.[3] Further, it would appear to be impossible for defendant, a common carrier, to enter a contract of private carriage or of rental.[4]
 
 
 20
 The determination of the trial court that Moorhead was at the time in question acting as a common carrier and was thus subject to liability without fault was, in the light of the foregoing, proer.
 
 
 21
 2. The issue involving rejection of evidence.
 
 
 22
 The record does not disclose by offer of proof or otherwise, the particular testimony which Moorhead contends the trial court excluded. We only know that it involved his prior out-of-court statement to his employee immediately before the commencement of the transport project. It is not possible, therefore, to determine whether this excluded testimony was admissible and should have been received as an exception to the hearsay rule. From what has been brought to our attention, it would appear that the trial court's ruling excluding this evidence was not incorrect.[5]
 
 
 23
 3. The contention re the co-insurance clause.
 
 
 24
 The Great American Insurance Company contends that its liability is limited by the co-insurance clause of the policy which covered the instant damage. It is paragraph 8 which is relied on. This provides that the company shall not be liable for a greater proportion of any loss or damage than the applicable amount of insurance specified in clause No. 1 bears to the total liability of the Assured with respect to the merchandise at risk hereunder involved in the casualty or disaster. The difficulty encountered in acceptance of this argument is that no limit is specified in clause No. 1. There are blank places under 'description of motor trucks,' and 'description of locations.' In each instance there is an item 'amount of insurance,' but no limitation appears here or in any part of clause No. 1. Paragraph No. 5 imposes a limitation of $80,000.00 'in any one casualty,' but this is not the limitation referred to in paragraph No. 8. Paragraph No. 4, under 'Conditions,' limits liability to 'actual cash value,' but again this is not the limitation which is referred to. The loss in question is within both of these limitations and it must be concluded that the co-insurance clause is not applicable, and that the trial court did not err in failing to give effect to it.
 
 
 25
 4. Whether interest should have been allowed prior to judgment.
 
 
 26
 The question whether interest should have been allowed must be determined by reference to the law of New Mexico.[6] On this, the trial court concluded that the New Mexico statutes might permit an award of interest, but that such award is not required. The judge further determined that neither the equities of the case nor other considerations required the inclusion of interest as an element of damages. Thus, the question is whether under the law of New Mexico interest must be awarded under circumstances such as the present ones.
 
 
 27
 The damages arise out of injury to property and are thus unliquidated and their character as such is not changed by the fact that the obligation of the insurance company defendant is imposed by a contract.[7]
 
 
 28
 A recent decision of the Supreme Court of New Mexico based on facts similar to the present ones virtually settles the issue. The case is that of O'Meara v. Commercial Insurance Co., 71 N.Mex. 145, 376 P.2d 486. Here pre-judgment interest was demanded in connection with damages arising from an automobile collision. The action had been brought on a collision policy. While recognizing that the amount claimed was money 'due by contract,' the New Mexico court nevertheless held that the trial judge had a discretion to allow or withhold interest.[8]
 
 
 29
 It must be concluded that plaintiff did not have an absolute right to interest from the date of the damage. The trial court was empowered to refuse to award interest and there is nothing in the record which suggests an abuse of discretion.
 
 
 30
 The question whether The Great American Insurance Company is liable for interest in excess of the policy limitations is rendered moot by our conclusion that the co-insurance clause was not applicable.
 
 
 31
 The judgment is affirmed.
 
 
 
 [1]
 During the initial discussions the parties had agreed that the transportation would be on private property
 
 
 [2]
 Rule 52(a), Federal Rules of Civil Procedure; United States v. U.S. Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948); Prudential Ins. Co. of America v. Carlson, 126 F.2d 607 (10 Cir., 1942)
 
 
 [3]
 New Mexico Statutes 1953, Section 64-27-2
 
 
 [4]
 New Mexico Statutes 1953, Section 64-27-27. This section provides: 'Motor carriers for hire operating under certificates or permits may not, as lessor enter into any agreement of lease relating to any motor vehicle equipment with any other person except a motor carrier for hire operating under certificate or permit, * * *.'
 Interstate Commerce Commission v. Isner, et al., 92 F.Supp. 582 (E.D.Mich., S.D. (1950); United States v. La Tuff Transfer Service, 95 F.Supp. 375 (Minn., 1950).
 
 
 [5]
 See 31 C.J.S. Evidence 193, at 929. Cf. Grand Forks Building & Development Co. v. Implement Dealers Mutual Fire Ins. Co., 75 N.D. 618, 31 N.W.2d 495 (1948); Frangos v. Edmunds, 179 Or. 577, 173 P.2d 594, 596 (1964); Greenan v. Ernst, 393 Pa. 321, 143 A.2d 32 (1958); Ennis v. Brawley, 129 W.Va. 621, 41 S.E.2d 680 (1947); Contra: Sellers v. White, 104 Ga.App. 148, 121 S.E.2d 385 (1961)
 
 
 [6]
 New Mexico Statutes 1953, Section 50-6-3
 
 
 [7]
 (See Restatement of Contracts, 337, which distinguishes between liquidated damages or damages which are ascertainable by some standard contained in the contract, which type would give rise to interest from the date or breach, and those damages which are unliquidated and therefore require adjudication in order to determine the amount of judgment; in the latter instance the allowance of interest is discretionary. See also Oklahoma Natural Gas Co. v. Concho Construction Co., (10 Cir. 1953) 209 F.2d 269; Flanaghan v. Tompkins, (1950) 86 U.S.App.D.C. 307, 182 F.2d 92; Concordia Ins. Co. v. School Dist. No. 98, 282 U.S. 545, 51 S.Ct. 275, 75 L.Ed. 528 (1931); United States Fire Ins. v. Wooten, (4 Cir. 1934) 71 F.2d 580; National Union Fire Ins. Co. v. California Credit Corp., (9 Cir., 1935) 76 F.2d 279.)
 
 
 [8]
 The Court said (376 P.2d at page 490:
 'There can be no question but that the policy of insurance created a contract between O'Meara and the insurance company. Thus, we conclude that the date on which the contract of insurance was breached-- June 30, 1958, when appellant denied liability-- is the date when interest, as an element of damage, might be considered. The trial court could have included such an award in arriving at the amount of the judgment; however, it refused to do so and we decline to interfere with such a result under the facts of this case. The allowance of interest as an element of the total damage, under the circumstances here present, is a matter of discretion in the trier of the facts, and not a matter of right under the statute.'