Allen **LEAKE**, Plaintiff and Appellant,

v.

Charlotte **HAGERT**, Defendant and Respondent.

Civ. No. 8569.

Supreme Court of North Dakota.

March 25, 1970.

Stokes, Vaaler, Gillig, Warcup & Woutat, Grand Forks, for plaintiff and appellant.

Letnes, Murray & Marshall, Grand Forks, for defendant and respondent.

PAULSON, Judge.

This is an appeal by the plaintiff, Allen Leake, from a judgment of dismissal of his cause of action entered in the District Court of Grand Forks County, North Dakota, and from an order of the trial court denying his motion for a new trial.

Allen Leake's complaint was predicated upon the alleged negligence of the defendant, Charlotte Hagert, in her operation of a motor vehicle on October 25, 1966, wherein she negligently and carelessly drove her automobile into the rear of the plow being towed by a tractor which Leake was operating, causing injuries to Leake and damages to his plow and tractor. Leake's complaint included allegations of damages for hospital and doctor bills; for permanent injuries to his chest and right arm; for pain and suffering; and for damages to his plow and tractor; and he

prayed for a judgment against Charlotte Hagert in the sum of $27,600. Charlotte Hagert, in her answer, admitted that the collision occurred, but, as a defense, denied that the collision was proximately caused by her negligence in the operation of her motor vehicle, and she alleged that the sole and proximate cause of the collision was the negligence of the plaintiff in the maintenance and operation of his tractor and plow, upon a public highway after sunset, without proper lights, reflectors, or other warnings. Charlotte Hagert counterclaimed for damages caused by the alleged negligence of Allen Leake for permanent injuries, for pain and suffering, for hospitalization and medical expenses, and for damages to her 1966 Plymouth automobile; and she prayed for a judgment against him in the sum of $32,000.

All claims and defenses of both Allen Leake and Charlotte Hagert were submitted to a jury, which returned a verdict dismissing the complaint of Allen Leake as well as dismissing the counterclaim of Charlotte Hagert.

Allen Leake, before the case was submitted to the jury, made a motion asking the court to direct a verdict dismissing the defendant's counterclaim on the ground that Charlotte Hagert was guilty of negligence as a matter of law. She resisted this motion and also made a motion for a directed verdict, which, in turn, was resisted by Allen Leake. The trial court denied both motions. See Northern Improvement Co. v. Pembina Broadcasting Co., 153 N.W.2d 97 (N.D.1967); Rule 50(a), North Dakota Rules of Civil Procedure.

Allen Leake, after the judgment was entered, made a motion for a new trial which was denied by the trial court. The motion set forth specifications of error, which, generally, are as follows:

1. That certain errors of law occurred at the trial in that:

a. Edward Gross was permitted to give testimony which was hearsay;

b. The field notes of Edward Gross, which contained hearsay evidence and were self-serving declarations, were admitted into evidence;

c. The court erred in instructing the jury;

d. The court erred in refusing to give the plaintiff's requested instructions.

2. That the evidence was insufficient to justify the verdict and that it is against the law.

3. That there were irregularities in the proceedings of the court or abuse of the court's discretion, which prevented the plaintiff from having a fair trial.

4. That the plaintiff's cause was subject to accident or surprise in that the juror and foreman, Lewis Nelson, had had a similar accident and did not advise counsel, on questioning, of this fact and that he had no prejudice which could in any way disqualify him, and that this surprise was unknown until after the verdict of the jury, and it is to the prejudice of the plaintiff.

Allen Leake, after his original motion for a new trial was made, moved to amend his specifications of error to include an alleged error made by the trial court in not granting the jury's request to have the testimony of Scott Bosard read to them. The trial court also denied this motion.

The above are in substance the same specifications of error set forth on appeal to this court from the judgment dismissing Allen Leake's complaint and from the trial court's order denying the plaintiff's motion for a new trial. It should be mentioned that the defendant is not appealing from the judgment dismissing her counterclaim. Kingdon v. Sybrant, 158 N.W.2d 863 (N.D.1968).

The record reveals that Charlotte Hagert, on cross-examination, testified in substance that she lived with her husband, Curtis Hagert, on a farm south of Emerado, North Dakota. On October 25, 1966,

she decided to drive to Emerado. She left the farm during the evening and started driving north on Highway No. 3, which is a paved farm road. As she was driving north she saw a car approaching from the north and when the cars were approximately a mile apart she dimmed her headlights. Immediately after the oncoming car had passed her vehicle, she became aware that a tractor towing a plow was proceeding north, directly in front of her. She applied her brakes, slowing her car to some extent, but her car continued forward and struck the plow. The impact of the collision forced the front end of her car up on the plow and, as a result, she was thrown forward in her car and was knocked unconscious.

She further testified that the road preceding the point of impact was not level and, in fact, there was a rise in the road. She also stated that she had not seen any lights or reflectors on the plow or the tractor that she could remember; that at the time of the accident she was driving at a speed of between 50 and 60 miles an hour; that her car collided with the plow and tractor when her car was in the east lane and, as a result of the collision, her car and the plow crossed the centerline of the road into the west lane, and the tractor veered into the east ditch.

Mrs. Hagert further testified that she was 46 years of age at the time of the accident and had lived in the same area with her husband since their marriage some 27 years earlier; that she was familiar with the highways in that area and with the fact that during the farming season farmers were often driving their equipment on the highways; and that she was aware that within this area there might be cars parked along the highways at night, some without lights.

Mrs. Hagert further testified that prior to the accident she and her husband had purchased a new 1966 Plymouth automobile, and that on the day of the accident this car's odometer had registered approximately 4,000 miles. She also testified that she had driven this car previously and at the time of the accident it was in good operating condition, and particularly its power brakes.

Highway Patrolman Edward E. Siemieniewski, who investigated the accident, testified that the accident was reported on October 25, 1966, at about 6:45 p. m., and that on this day the sun had set at 5:22 p. m. He testified that he arrived at the accident scene at about 7:30 p. m., and his investigation revealed that the accident occurred about 3 miles south of Emerado, on Highway No. 3, the blacktop surface of which is 26 feet wide; that there were skid marks 146 feet in length made by the Hagert car and that, after the accident, the tractor had come to rest 104 feet from the car; that the plow and the car were badly damaged; that the lights on the tractor were not burning, but that when he activated the light switch, he found that the two front lights and one rear light were in working condition; that the rear light was a white light, but he did not know which one of the two rear lights was working, because the lenses in both lights had been broken; that the road south of the accident scene was not level, but had a slight rise, but not sufficient to interfere with a driver's range of vision.

Mrs. Allen Leake, the plaintiff's wife, testified that she and the wife of Highway Patrolman Siemieniewski were cousins.

Scott Bosard, who lives 4½ miles south of Emerado, testified that on October 25, 1966, between 6:30 p. m. and 7:00 p. m., while he was on his way home from Emerado, he was a passenger, riding in the right rear seat of a car driven by Gladys LaFontaine, who was driving south on Highway No. 3 at a speed of between 50 and 55 miles an hour. He further testified that while the LaFontaine car was proceeding south on such highway, he observed Allen Leake driving his tractor and towing a plow coming from the opposite direction; that the car in which he was riding met Allen Leake's tractor and plow

at the top of the rise in the road south of the point where the accident occurred, and also met another car, also traveling north, about 300 yards further south of the rise. He also testified that he did not see the accident nor stop at the accident scene after the collision.

Allen Leake testified that on October 25, 1966, he had been plowing in a field south of where the accident occurred. When he finished plowing he left the field, turned left, and proceeded north on Highway No. 3. He was driving a tractor and towing a plow. The tractor was equipped with two headlights and two rear lights; one of the rear lights was a white working light for use when working in the fields and the other was a smaller red light for use when driving on the highways. He testified that when he turned on to Highway No. 3 he switched on his lights and tested them, and at that time both headlights and the small red rear light were working. He further testified that he was driving his tractor prior to the accident at a speed of about 10 miles an hour; that he had driven north on Highway No. 3 about 1½ miles; that a car passed him coming from the opposite direction; that he observed a car approaching from behind him at a fast rate of speed; that he atttempted to pull his tractor and plow to the right side of the road, but before he could do so the oncoming car struck his plow from the rear, causing the plow and tractor to disengage and forcing his tractor into the right ditch. He further testified that there were two 3-inch reflectors on the plow and that he had often observed them when his plow was in his farm yard. He stated that the reflectors were visible at night when automobile headlights shone on them and that they could be seen from a distance of about 500 feet.

Allen Leake testified on cross-examination that he did not make a minute inspection of the rear end of the tractor and did not know the condition or color of its rear taillight, either before or after the accident. He further testified that he did not know whether the red light was burning at the time of the collision, and stated that there could have been some dust on the reflectors as a result of his plowing in the field prior to the accident; that he had no recollection of how the tractor stopped or of how he got off the tractor; and he testified that the car which hit him was traveling about 70 miles an hour.

Curtis Hagert, in support of his wife's counterclaim and defense against the claim of Allen Leake, testified that his wife left their farm at about 6:30 on the evening of the accident; that after he heard about the accident he called his son-in-law, Myron Larson, who came to the farm and gave him a ride to the hospital to which his wife had been taken. On the way to the hospital, Curtis Hagert and Myron Larson stopped and observed the scene of the accident and inspected the damages to the Hagart car. Highway Patrolman Siemieniewski was at the accident scene and was checking the lights on the tractor when they arrived, and Curtis Hagert testified that the small light on the rear of the tractor did not come on until the patrolman struck it. He further testified that the lens for the small light was missing from the rim but the bulb was not broken; that there was no indication of any broken glass inside the casing of the small light; and that the casing was rusty and dirty and the bulb was colored with a red substance.

Myron Larson, the Hagerts' son-in-law, testified that he gave Curtis Hagert a ride to the hospital to which Mrs. Hagert had been taken and enroute they stopped and observed the scene of the accident. He further stated, with respect to the tractor lights, that the front lights came on, but the working light and the taillight both failed to light until the highway patrolman jiggled them; and that there was no lens in the small light, the bulb of which was painted a pinkish, faded red color.

Edward Gross testified that he investigated the accident on October 26, 1966, the day following the accident. His investiga-

tion included visiting the scene of the accident and making an inspection of the tractor and plow, and the damaged car; and taking pictures and making field notes of his findings. He testified, with reference to the small light, that it did not have a lens in it; that the rubber gasket of the small light was weatherbeaten and shriveled; that the casing did not have any reflectorized material inside of it; that the bulb had some red and green paint on it; and he stated that the plow had a reflector on it, which was dusty, and which did not face the rear, but was turned to the right. He further testified that the skid marks made by the Hagert car measured approximately 131 feet. He stated that, while he was making his investigation, he talked to Allen Leake's son, who told him that the lens in the small light had been missing from its frame for some time prior to the accident. He further testified that he took statements from both Allen Leake and Charlotte Hagert as to how the accident occurred.

In addition to the testimony of the above witnesses, a number of pictures of the accident scene, the tractor and plow, and the car were introduced into evidence. The field notes of Edward Gross and the statement taken by him were introduced into evidence, which contained evidence of the fact that the lens in the small light on the rear of the tractor had been out for some time.

The foregoing, in substance, was the pertinent testimony and evidence presented at the trial to the jury.

Leake's first contention on appeal is that certain errors at law occurred during the course of the trial, at the time that the trial court overruled objections to the admission of certain evidence. The evidence objected to was certain testimony adduced from Edward Gross, an adjuster who investigated the accident. Gross testified that Allen Leake's son told him, with reference to the small rear light on the tractor, that the red lens had been out for some time. Edward Gross's testimony con-

cerning the statement of Allen Leake's son was hearsay.

The hearsay rule prohibits use of a person's assertion, as equivalent to testimony of the fact asserted, unless the assertor is brought to testify in court on the stand, where he may be probed and cross-examined as to the grounds of his assertion and his qualifications to make it. Grand Forks B. & D. Co. v. Iowa Hardware Mut. Ins. Co., 75 N.D. 618, 31 N.W. 2d 495 (1948). See 5 Wigmore on Evidence (3d ed.) §§ 1361, 1364. Allen Leake contends that whether or not the red lens was out at the time of the accident is a material question of fact, determinative as to the contributory negligence by Allen Leake, and whether he complied with the standards set forth in § 39–21–15, N.D.C. C., which requires that every tractor, when operating upon a highway of this state at any time from one-half hour after sunset to a half-hour before sunrise, be equipped with at least one lamp displaying a red light visible, when lighted, from a distance of one thousand feet to the rear of such tractor. Leake's son did not testify in the present action; he was not a party to the action; his statement was not made under oath; his statement was not subject to cross-examination; and he was not available as a witness at the time of trial because he was in the Army and overseas. We find that it was error for the trial court to admit into evidence the testimony concerning what Leake's son said to Edward Gross; the son's statement was hearsay and should have been excluded.

Having found that the trial court erred in admitting the statement of Allen Leake's son into evidence, we must determine on this appeal whether such an erroneous admission was prejudicial and constitutes reversible error. Under Rule 61, N.D.R. Civ.P., error in the admission of evidence is not a ground for a new trial unless such error affects the substantial rights of the parties. Fox v. Bellon, 136 N.W.2d 134 (N.D.1965). Therefore, to be prejudicial error, the substantial rights of the com-

plaining party must be affected. Other witnesses testified during the trial as to the condition of the taillight and whether the light had a red lens. Curtis Hagert, Myron Larson, and Edward Gross testified to the fact that the rear light was painted or covered with some reddish substance and that there was nothing which would indicate that the red lens had been shattered by the accident. In addition, a statement taken by Edward Gross, from Allen Leake's summary of circumstances surrounding the accident, included a statement that the lens had been out for some time before the accident. This statement was introduced by Allen Leake. Reviewing the record concerning the testimony submitted with reference to the condition of the light and the lens at the time of the accident, we find that the hearsay statement of Allen Leake's son was erroneously admitted by the trial court, but that such error was not prejudicial.

Allen Leake urges that the trial court erred when it permitted the admission of the field notes of Edward Gross into evidence. Leake contends that the field notes contained hearsay evidence and were self-serving declarations. The hearsay evidence contained in the field notes consisted of a summary of what Allen Leake's son told Edward Gross with regard to the red lens being out for some time. As previously stated by this court, it was error on the part of the trial court to permit the admission of such hearsay evidence, but because other competent testimony as to the same fact was admitted by other evidence, the error would not be prejudicial unless the admission of all of the field notes was deemed prejudicial and constituted reversible error.

■ Leake contends that none of the field notes should have been admitted into evidence and that their consideration by the jury should not have been permitted, because such notes were self-serving declarations of the witness, Edward Gross, who testified at the trial. While it is generally recognized that the written statement of a witness cannot be introduced into evidence over objection unless the adverse party has the right to confrontation and the right to cross-examination, in the present case it was Allen Leake who introduced testimony, through cross-examination of Edward Gross, as to the contents of Gross's field notes and it was Gross's field notes which supported the testimony of Allen Leake. The plaintiff may have believed that questioning Edward Gross as to the contents of his field notes was good trial strategy, but Allen Leake cannot now complain of the introduction of such field notes if they were used by him during the course of the trial. This court held, in the case of Grand Forks B. & D. Co. v. Iowa Hardware Mut. Ins. Co., *supra,* that the admission of a detailed statement was prejudicial error. However, in that case the written statement contained statements of fact and conclusions which had not been testified to in open court. In the case at bar, the field notes of Edward Gross did not contain any facts or conclusions, but only notations as to damages to the vehicles and as to measurements to which he testified on cross-examination by Leake's attorney. Accordingly, we conclude that it was not prejudicial error for the trial court to admit the field notes of Edward Gross into evidence.

■ Allen Leake further contends that certain of the trial court's instructions to the jury were improper. The law in North Dakota with reference to jury instructions is well established. This court on appeal has followed the rule that although an instruction standing alone may be insufficient or erroneous, it must be considered in connection with the remainder of the charge; and if the whole charge taken together correctly advises the jury as to the law, the error, if any, is thereby cured. Willert v. Nielsen, 146 N.W.2d 26 (N.D. 1966); Spalding v. Loyland, 132 N.W.2d 914 (N.D.1965); Grenz v. Werre, 129 N. W.2d 681 (N.D.1964); Froh v. Hein, 76 N.D. 701, 39 N.W.2d 11 (1949).

Allen Leake asserts that it was error for the trial court to give the following instruction:

"4. Before a person can be held responsible for negligence or willful misconduct, either as the basis of a claim of liability or as a basis of the defense of contributory negligence, his wrongful conduct must have been a proximate cause of the injury. * * *"

Leake particularly states that it was error for the trial court to include in such instruction on negligence the following language:

"* * * negligence or *willful misconduct* [emphasis added], either as a basis of a claim of liability or as a basis of contributory negligence * * *"

Leake contends that the use of the words "willful misconduct" in the charge was error, because it was not alleged in the pleadings, and, furthermore, the evidence did not support and prove a claim of willful misconduct. Although we agree with Allen Leake that it was error for the court to so instruct, the instructions, considered in their entirety, correctly advised the jury as to the law of negligence; and, in addition, we are of the opinion that the use of the words "willful misconduct" or "negligence" by the court in the alternative was not sufficient to mislead the jury as to the applicable rule of law to apply to the issues in the case, especially where the balance of such instruction related only to what is required to satisfy actionable negligence to support Leake's claim.

Leake also urges that it was error for the trial court to quote an entire statute, which contained irrelevant language, not pertinent to the evidence submitted at the trial. The trial court set out, in essence, all of § 39–21–15, N.D.C.C., in Instruction Number 6:

"6. * * *

"Section 39–21–15. Every farm tractor, *self-propelled* unit of farm equipment, or towed implement of husbandry, when operated upon the highways of this state at any time from a half hour after sunset to a half hour before sunrise, shall be equipped as follows: 1. Tractors and self-propelled units of farm equipment shall be equipped with two single-beam or multiple-beam head lamps meeting the requirements as herein before set forth, provided, that a tractor or self-propelled unit of farm equipment which is not equipped with an electrical system shall be equipped with at least one lamp displaying a white light visible when lighted from a distance of not less than one thousand feet to the front of such vehicle. Every tractor and self-propelled unit of farm equipment shall be equipped with at least one lamp displaying a red light visible when lighted from a distance of one thousand feet to the rear of such vehicle. *In addition, every self-propelled unit of farm equipment shall be equipped with two red reflectors visible from all distances from six hundred feet to one hundred feet to the rear when directly in front of lawful upper beams of head lamps.* [Emphases added.]

"2. Every towed unit of farm equipment or implement of husbandry shall be equipped with at least one lamp displaying a red light visible when lighted from a distance of one thousand feet to the rear or two red reflectors visible from all distances within six hundred to one hundred feet to the rear when directly in front of lawful upper beams of head lamps. *In addition, if the extreme left projection of such towed unit of farm equipment or implement of husbandry extends beyond the extreme left projection of the towing tractor or vehicle, such unit or implement shall be equipped with at least one amber lamp or reflector mounted to indicate as nearly as practicable the extreme left projection and visible from all distances within six hundred feet to one hundred feet to the front thereof when illuminated by the upper beams of head lamps and at least one red lamp reflector so mounted and*

*visible from such distances to the rear.* [Emphasis added.]

"The lamps and reflectors required by this section shall be so positioned as to show from front and rear as nearly as practicable the extreme projection of the vehicle carrying them on the side of the roadway used in passing such vehicle. If a farm tractor or a unit of farm equipment, whether self-propelled or towed, is equipped with two or more lamps or reflectors visible from the front or two or more lamps or reflectors visible from the rear, such lamps or reflectors shall be so positioned that the extreme projections both to the left and to the right of said vehicle shall be indicated as nearly as is practicable. * * *"

The main thrust of Leake's argument is that the emphasized portion of the instruction is surplusage and misleading, in that: first, no self-propelled unit of farm equipment was involved in the case; and, second, there is no evidence that any part of the plow extended to the left of the tractor, both of which, under § 39–21–15, N.D.C.C., require different standards of lights or reflectors when used on the highways in North Dakota.

This instruction is, in essence, a direct quote from § 39–21–15, N.D.C.C.; therefore, it is a correct statement of the law. Our court said, in Spalding v. Loyland, *supra* 132 N.W.2d at 923:

"Although there was no evidence whatsoever in the record to which the quoted portion of the statute could apply, nevertheless, it was copied and given. The inclusion in an instruction of inapplicable portions of a statute can only add to the jury's formidable task of applying the law as given to it by the court to the facts as it finds them. For this reason, we find it was error to so instruct.

'A verdict is properly set aside, and a new trial granted, where the instructions were not applicable under the evidence, and tended to mislead and confuse the jury. The fact that such instructions may state correct legal propositions in no manner changes the rule. Welter v. Leistikow, 9 N.D. 283, 83 N.W. 9.'"

This court has also said, in Mills v. Roggensack, 92 N.W.2d 722, 725 (N.D.1958):

"We agree that this instruction was superfluous but that does not mean that it was necessarily prejudicial. Instructions on issues or matters not warranted by the evidence are erroneous but constitute reversible error only when calculated to mislead the jury or in other words when they are prejudicial. Foster v. Dwire, 51 N.D. 581, 199 N.W. 1017, 51 A.L.R. 21; Schwabel v. First National Bank, 53 N.D. 904, 208 N.W. 236."

This being the law, we must determine whether in the instant case the instruction tended to mislead or confuse the jury. It is difficult for us to find that the jury was misled or confused by the instruction. Considering the evidence submitted at the trial and the instruction given, a jury would reasonably infer that no self-propelled unit of farm equipment was involved and therefore would not apply the inapplicable portion of § 39–21–15, N.D.C.C., to the facts before them. As to the claim that the evidence did not support the instruction concerning a pulled unit which extended to the left of the tractor, the standards of reflectors to the rear as required by the statute were fully complied with, and this is supported by the evidence; even if the jury would have determined that the plow did extend to the left of the tractor when being pulled. Considering these facts, in addition to the fact that the statute was clearly separable as to certain requirements for different types of vehicles, we believe that the jury was not misled or confused by the instruction; and, even though it was error for the trial court to so instruct, the error was not prejudicial.

■ Leake asserts as additional error the trial court's failure to include a cautionary provision with respect to proximate cause when it instructed the jury as follows:

"* * * that a violation of any of the traffic laws of the state of North Dakota, or any other law bearing thereon is evidence of negligence which the jury may consider in determining the issue of negligence." [Instruction No. 7.]

It is Leake's contention that a violation of law may be considered as evidence of negligence, but only when such violation is found to be the proximate cause of the injury. The above-quoted instruction has been approved by this court in many cases. Attleson v. Boomgarden, 73 N.W.2d 448 (N.D.1955); Imus v. Huber, 71 N.W.2d 339 (N.D.1955); Spenningsby v. Peterson, 67 N.W.2d 913 (N.D.1955); Knudsen v. Arendt, 79 N.D. 316, 56 N.W.2d 340 (1952). In none of the cases has this court been presented with the issue now under consideration. Leake's contention has merit and a cautionary provision with respect to proximate cause would have been more specific and helpful to the jury in order for them to better understand and apply the law of the case to the facts before them. However, a review of the instruction shows that the trial court did properly instruct the jury on proximate cause, on the elements of negligence, and on what constitutes actionable negligence; and we therefore find that it was not prejudicial error for the trial court to so instruct.

■ Leake urges that the trial court's instruction on circumstantial evidence was erroneous because all of the facts were testified to by both parties who were present and who were eyewitnesses to the accident. We find from the record that the court's instruction was proper, especially since there was conflicting testimony as to whether the rear light on the tractor was lit prior to and at the time of the accident, and, accordingly, the jury had the right to consider the direct evidence as well as the circumstantial evidence in order to determine whether or not the rear light was burning and, in addition, whether such light also had a red lens, as required by the statute.

■ Leake asserts additional error because of the refusal of the trial court to grant Leake's Requested Instructions Nos. 9, 11, 12, and 17. Requested Instruction No. 11 dealt with the issues of negligence and proximate cause; and Requested Instruction No. 17 concerned the rule of law where a driver is blinded by a glare of light, and the exercise of care required. Both were submitted by Leake as error, but were not argued either in his brief or on oral argument. Specifications of error unsupported by argument in the brief filed in the Supreme Court are deemed abandoned. Rule 8(B), North Dakota Supreme Court Rules, 76 N.D. xix; Regent Co-op. Equity Exch. v. Johnston's Fuel Liners, 122 N.W.2d 151 (N.D.1963); Mevorah v. Goodman, 68 N.W.2d 469 (N.D.1955).

■ Requested Instruction No. 12 sets forth the burden of proof required of Allen Leake and Mrs. Hagert with reference to negligence and contributory negligence and incorporating proximate cause. Leake concedes that the same is included in the court's instructions and submits no further argument. Leake concedes that Requested Instruction No. 9 and the court's instructions, which are based on North Dakota pattern jury instructions, do not satisfactorily explain the proof required by the fair-preponderance-of-the-evidence rule. However, Leake does not present any argument in support thereof. Considering both Requested Instructions Nos. 12 and 9, and the failure of Leake to submit argument in support of such alleged errors, this court deems that Leake has abandoned them, and, therefore, they will not be discussed.

■ Leake contends that since the court instructed the jury on the question of "willful misconduct" or "negligence", the court should have defined what "willful

misconduct" means. Leake's Requested Instruction No. 6 contains such wording. Having decided that it was error for the trial court to instruct the jury with regard to "willful misconduct", Leake's Requested Instruction No. 6 would only compound that error. Thus we determine that it was not prejudicial error for the trial court to refuse to give Leake's Requested Instruction No. 6.

Leake's Requested Instruction No. 16 reads as follows:

"If you should find from the evidence that parties to this action have violated the law of the State of North Dakota governing the use of motor vehicles as I have instructed you, then you are instructed that such violation is evidence of negligence. However, I charge you in connection therewith that a violation of law is of no consequence unless it was a proximate cause of, or contributed, in some degree as a proximate cause, to an injury found by you to have been suffered by one of the parties."

Since we previously have determined that the trial court did not err when it failed to include the issue of proximate cause in conjunction with the instruction to the jury that a violation of the law is evidence of negligence, no further discussion with reference to Leake's Requested Instruction No. 16 is necessary.

■ Leake's Requested Instruction No. 19 is divided into two parts; the first part being an excerpt from § 39–21–15, N.D.C.C., and the second part being the statutory definition of the words "lawful upper beams of head lamps". The trial court did give the requested instruction as to the excerpt from § 39–21–15, N.D.C.C., but denied the requested instruction as to the definition of the words "lawful upper beams of head lamps". We find that the trial court did not commit error in denying the same, because there was no evidence contained in the record that Mrs. Hagert was using the upper beams of the head lamps on her car when the accident occurred.

■ The trial court gave the following instruction to the jury:

"5(3) * * * The rule of safety is the rule that one must drive at such a speed as to be able to stop within the assured clear distance ahead. The word "Assured" means with reasonable certainty rather than absolute certainty. In order to comply with this rule, the driver of a motor vehicle must not operate it at a greater speed than will permit him to bring it to a stop within the distance between his vehicle and a discernible object obstructing his path or line of travel. The distance that a driver can see ahead of him is shortened at night in the dark, and he should therefore drive more slowly after nightfall, and must be able, as a general rule, to stop within the range of his headlights for such obstructions as an ordinarily careful driver would see."

Leake submitted to the court Requested Instruction No. 10, which reads as follows:

"You are instructed that the law of the State of North Dakota requires that a person must drive his vehicle at such a speed as to be able to stop within the assured clear distance ahead and that a driver must anticipate that other vehicles, lighted or unlighted, may be upon the road and he must see such vehicle as a careful person would have seen."

Leake's primary contention is that the trial court in its instruction to the jury should not have qualified the word "assured" with the words "with reasonable certainty rather than absolute certainty". We find, after considering the court's instruction, that the court properly instructed the jury as to the law with regard to the assured-clear-distance rule; and, in addition, that the court explained the proper application of that rule to the evidence adduced at the trial.

■ Leake asserts that the court erred when it did not give his requested in-

structions, which error he bases on the following instruction given by the trial court:

"* * * Any person driving a vehicle on a street or highway shall drive the same in a careful and prudent manner, having due regard to the traffic, surface, and width of the street or highway and any other conditions then existing. No person shall drive any vehicle upon a street or highway in a manner to endanger the life, limb, or property of any person. * * *" [Instruction No. 6.]

Leake asked that the court give his Requested Instructions Nos. 3 and 22, which relate to the court's instruction above. Leake's Requested Instructions Nos. 3 and 22 are similar, except for the fact that No. 3 directs that the court "instruct" and No. 22 directs that the court "charge" the jury. Both of these requested instructions are, in essence, what the court did instruct the jury. Leake contends that the court should have instructed the jury by stating that it is unlawful to drive in a careless and heedless manner. We find that the language used by the trial court in its instruction was given in a fair and unbiased manner and that such instruction was a correct statement of the law and that the trial court did not err in refusing to give Leake's Requested Instructions Nos. 3 and 22.

Leake's Requested Instructions Nos. 5 and 20 were qualifications of the absolute speed limits as set forth by statute. He contends that the court should have given these requested instructions. However, we find from a reading of the entire instructions that the court, in substance, did qualify the specific instruction given as to the speed limits on the highway where the accident occurred, and thus the court did not commit error in refusing to give Requested Instructions Nos. 5 and 20.

Leake's Requested Instruction No. 4 states that it is the duty of every driver to exercise ordinary care in the operation of a motor vehicle, defines ordinary care, and sets forth a driver's responsibility for failure to comply with the duty to drive carefully. We have reviewed Requested Instruction No. 4, as well as the trial court's instructions, and determine that the trial court, in essence, gave a similar instruction. Thus the trial court did not err in refusing to give Leake's Requested Instruction No. 4.

Leake sets forth as grounds for his motion for a new trial that the evidence was insufficient to justify the jury's verdict and that the verdict was contrary to law. Leake, in support of this contention, asserts that: where he was driving his tractor on the highway, towing a plow, and Mrs. Hagert was driving her automobile in the same direction, and collided with the rear end of his plow, that the accident resulted either from Mrs. Hagert's failure to maintain a proper lookout or because she was overdriving her range of vision within her lights while driving with them on dim.

This court has held that the question of whether a new trial should be granted upon the ground of insufficiency of the evidence rests largely in the trial court's sound discretion. Any action which the trial court takes on such motion will not be disturbed by this court on appeal in the absence of a showing of abuse of such discreation. Muhlhauser v. Archie Campbell Construction Co., 160 N.W.2d 524 (N.D. 1968); Sucher v. Oliver-Mercer Electric, 151 N.W.2d 321 (N.D.1967); Grenz v. Werre, 129 N.W.2d 681 (N.D.1964); Stokes v. Dailey, 97 N.W.2d 676 (N.D.1959); Hamre v. Senger, 79 N.W.2d 41 (N.D.1956).

The discretion of the trial court in passing on such motion is a legal discretion to be exercised in the interests of justice. Muhlhauser v. Archie Campbell Construction Co., *supra*; Sucher v. Oliver-Mercer Electric, *supra*; Maier v. Holzer, 123 N.W. 2d 29 (N.D.1963); Mann v. Policyholders' Nat. Life Ins. Co., 78 N.D. 724, 51 N.W.2d 853 (1952).

Before the trial court can exercise its discretion in deciding a motion for a new trial on the ground of insufficiency of the evidence, there must be sufficient evidence

in the record so that a decision could be made either way. McDermott v. Sway, 78 N.D. 521, 50 N.W.2d 235 (1951); Kohlman v. Hyland, 56 N.D. 772, 219 N.W. 228 (1928).

However, in passing on this motion, certain legal principles must be kept in mind. We often have held that questions of negligence, contributory negligence, and proximate cause are questions of fact for the jury, unless the evidence is such that reasonable men can draw but one conclusion therefrom, when they then become questions of law. Gleson v. Thompson, 154 N.W.2d 780 (N.D.1967); Sucher v. Oliver-Mercer Electric, *supra*; Grenz v. Werre, *supra*.

In determining the sufficiency of the evidence to sustain the verdict, the evidence must be viewed in the light most favorable to the verdict. Gleson v. Thompson, *supra*; Grenz v. Werre, *supra*.

The trial court did not specifically rule on this alleged specification of error, but held that all of the other specifications of error alleged were without merit. The trial court thus by implication ruled that the evidence was sufficient to justify the verdict of the jury when it denied Leake's motion for a new trial.

We conclude, after viewing the entire record, that the evidence was such that the verdict of the jury could have gone either way, and that reasonable men could have drawn different conclusions from the evidence. The jury brought in a verdict dismissing the plaintiff's cause of action and also dismissing the defendant's counterclaim. The jury must have found that Mrs. Hagert was negligent and that Leake was contributorily negligent. Leake contends that, as a matter of law, Mrs. Hagert was negligent and therefore the jury should have returned a verdict in his favor. Leake has failed to consider the question of his contributory negligence. The evidence in the case presents a question of fact as to whether Leake, while driving at night, had

proper lights and reflectors on his tractor and plow, as required by § 39–21–15, N.D. C.C., which the jury could consider as evidence of Leake's negligence and Mrs. Hagert's negligence, both of which were proximate causes of the accident. We determine that the jury's verdict that the plaintiff was contributorily negligent is amply supported by the evidence. Therefore, the trial court did not abuse its discretion in denying Leake a new trial.

Leake asserts that he was prevented from having a fair trial because of certain irregularities occurring during the course of the trial. Leake submits that he was prejudiced by the rulings and comments of the court as to the admission of certain evidence, as well as by the trial court's admonishments to Leake's counsel in open court. Generally, where a litigant wishes to take advantage of irregularities occurring during the course of a trial, either on the part of the court, the jury, the adverse parties, or anyone acting for or on their behalf, he must do so at the time the irregularities occur, in order that the court may take appropriate action, if possible, to remedy any prejudice that may have resulted. Braun v. Riskedahl, 150 N.W.2d 577 (N.D.1967). And when no objection is made at the time that a comment is made by the judge and no request is made for a curative instruction to the jury concerning the comment, an appellant waives any right to urge the comment as error on appeal. Gleson v. Thompson, *supra*.

We have reviewed each specification of error in light of the context in which each was made, as it appears in the record, and find that none of the allegations of error were objected to by counsel, except one, and at no time did counsel request that the court give a curative instruction to the jury. Leake objected to the court's admonishment of his counsel, when the court advised both counsel to keep their blood pressures down and then referred to the conduct of Leake's counsel as being the "worst of the whole bunch". The trial court is vested with the power and duty of

preserving order, of enforcing obedience to lawful orders and process, of controlling the witnesses and the conduct of counsel; and may take necessary precautions to ensure that the parties receive a fair and impartial trial. 53 Am.Jur., Trial § 34, p. 49; 88 C.J.S. Trial § 36, p. 91. See also §§ 27-10-01 and 27-10-03, N.D.C.C. There was a continuous colloquy between counsel, as is evidenced from the record, and both attorneys were very energetically representing their clients and their actions reached a point where the trial judge was required to admonish them. We do not believe from a perusal of the record that Leake was prejudiced by the trial court's admonishments.

Leake contends that his right to a fair trial was prejudiced when, through accident or surprise which ordinary prudence could not have guarded against, the plaintiff's attorney was informed after the verdict, that Lewis Nelson, the foreman of the jury, had been involved in a similar accident and did not so advise counsel, on questioning, of that fact on voir dire. Rule 59(b), N.D.R. Civ.P., sets forth the grounds for a new trial; and accident or surprise mentioned in Rule 59(b) (3) [identical language used in § 28-1902(3), North Dakota Revised Code of 1943, which statute was superseded by the Rule] as grounds for a new trial denotes an occurrence out of the usual course of events which happens suddenly or unexpectedly, without any design on the part of the person affected and which ordinary prudence could not have guarded against. See Hamre v. Senger, 79 N.W.2d 41 (N.D. 1956); Baird v. Kensal Light & Power Co., 63 N.D. 88, 246 N.W. 279 (1933).

█ Leake strenuously urges that learning that Juror Lewis Nelson had been involved in a similar accident was unexpected and a surprise, and that if such information had been known, Juror Nelson would have been excused from serving as a juror in the case. Leake has failed to show that ordinary prudence could not have guarded against this oversight on Leake's part. There is no transcript of the voir dire of

the jury to support the contention that Lewis Nelson was asked specifically whether he had been involved in a similar accident. This court, without such a record cannot assume that such question was asked, and therefore we find that Leake has failed to sustain the required burden of proof. Even if we would assume that Lewis Nelson was asked about his similar accident, Leake would be required to show that he was without knowledge that Lewis Nelson had experienced a similar accident and also show that he could not have acquired such information through diligent effort on his part. In addition, this court has said that a new trial will not ordinarily be granted for accident or surprise unless it appears probable that, except for the surprise or accident, a different verdict would have been rendered or a new trial will probably result in a changed verdict. Hamre v. Senger, *supra*. However, we do not reach this issue because we find that in the case at bar there was no basis on which to determine whether there was accident or surprise involved.

Leake's attorney made a motion to amend the specifications of error in support of Leake's motion for a new trial. Leake alleges that it was error for the trial court to refuse to grant the jury's request to have the testimony of Scott Bosard read to them. The request was made to the court when both parties and their attorneys were not present in court. The trial judge telephoned Leake's attorney and informed him of the jury's request and that the request was going to be denied. Leake's attorney did not object to such action taken by the trial court, except to specify it as error in his motion for a new trial and also on appeal to this court.

█ Leake contends that Ferderer v. Northern Pacific Ry. Co., 75 N.D. 139, 26 N.W.2d 236 (1947), is controlling, where the court said that the requirements of § 28-1419 of the North Dakota Revised Code of 1943 [§ 28-14-19, N.D.C.C.] are mandatory and that any failure to comply with this section is error per se and is

deemed prejudicial until the contrary is shown. In the *Ferderer* case the trial court entered the jury room and gave additional oral instructions in the absence of the court report, and in the absence and without the consent of or notice to the parties or their attorneys. The holding in the *Ferderer* case is limited to the mandatory requirement that when any additional information is actually given to the jury after they have retired for deliberation, such information must be given in the presence of the parties or their attorneys or only after notice has been given to the parties or their attorneys that such information will be given at a certain time, in the court room, at which time they may be present. This requirement still is the law in North Dakota. However, in the case at bar, this particular specification of error is not directed to additional information which was given to the jury, but, on the contrary, to the failure to give certain information. Where the court does not honor the juror's request, it has been found not to be error. Tschosik v. Meier, 110 N.W.2d 97 (N.D. 1961). We believe that in this respect the trial court has discretionary power to determine whether testimony should be read to the jury. § 28-14-19, N.D.C.C. See 50 A.L.R.2d 176. Each case must be decided upon its own facts. The time when the request is made to the court is important because, before the trial court grants a jury's request for additional information, the court must give notice to the parties or to their attorneys. In the instant case, the parties and their attorneys were not present when the jury requested that Scott Bosard's testimony be read to them. The trial judge notified the attorneys by telephone that he was going to refuse the jury's request, and Leake's attorney did not object at the time to such refusal. Assuming, without deciding, that the jury was entitled to have the reporter's minutes of the testimony of Scott Bosard read to them, we cannot agree with Leake that the failure to have such testimony read constitutes grounds for a reversal of the verdict where Leake failed to object prior to the rendition of the ver-

dict and the trial court did not furnish the jury with the additional information requested.

For reasons stated in the opinion, the order denying the motion for a new trial and the judgment are affirmed.

TEIGEN, C. J., and ERICKSTAD, STRUTZ and KNUDSON, JJ., concur.