**Darlene Mae TRAUTMAN and Darlene Mae Trautman as Administratrix of the Estate of Ronald E. Trautman, Deceased, Individually and as Trustee for the North Dakota Workmen's Compensation Bureau, Plaintiffs and Appellants,**

v.

**NEW ROCKFORD–FESSENDEN CO–OP TRANSPORT ASSOCIATION, a corporation, and Donald D. Nutz, Defendants and Respondents.**

Civ. No. 8601.

Supreme Court of North Dakota.

Dec. 4, 1970.

Mackenzie & Jungroth, Jamestown, for plaintiffs and appellants.

Wattam, Vogel, Vogel & Peterson, Fargo, for defendants and respondents.

TEIGEN, Chief Justice.

This case comes to us on appeal from the order of the district court denying a motion for a new trial, and from the judgment entered by the district court on the verdict of the jury dismissing the plaintiffs' complaint. This case was brought in the district court in Stutsman County by the plaintiffs Darlene Mae Trautman and Darlene Mae Trautman as Administratrix of the estate of Ronald E. Trautman, deceased, individually, and as trustee for the North Dakota Workmen's Compensation Bureau, seeking damages against the defendants New Rockford-Fessenden Co-op Transport Association, a corporation, and Donald D. Nutz, hereinafter referred to as plaintiffs and defendants, respectively.

The claim arose from a collision between a motorcycle and a truck, which truck was owned by the defendant, New Rockford-Fessenden Co-op Transport Association, a corporation, and was being driven by the defendant, Donald D. Nutz. The collision occurred on the 3rd day of August, 1966, at an interchange of I-94 just south of Jamestown, North Dakota. The facts, as presented at the trial, indicate that the deceased Ronald Trautman, while working in his official capacity as a policeman for the Jamestown Police Department, was driving the police department's three-wheeled motorcycle north over the interchange overpass when he collided with the truck. The evidence further indicates that the truck left I-94 on the off-ramp at the interchange where the accident occurred and had come to a complete stop at the intersection of the off-ramp and U. S. 281 where it crosses over I-94. After signaling for a left turn, the truck pulled out onto U. S. 281 and turned left to head south on the overpass which carries U. S. 281 over I-94. The truck was a tractor-trailer outfit. A huge fuel oil tank was mounted on the trailer and the outfit was being used to haul fuel to various dealers in the area. When the accident occurred, the tractor portion of the outfit was in the southbound lane; however, the tank-trailer was still largely in the northbound lane as it was being driven across into the southbound lane. The three-wheeled motorcycle, driven by Officer Trautman, struck the tank-trailer at the rear set of its wheels. Officer Trautman was thrown from his motorcycle, receiving serious injuries from which he ultimately died several months later. The accident occurred at approximately 1 p. m., on August 3, 1966. It was a clear August day without any adverse or unusual weather conditions. The highway patrol officer, who investigated the accident, testified that the skid marks left by the right and left rear wheels of the motorcycle measured 76 feet and 54 feet, respectively. The truck left skid marks of 3 feet, 9 inches, and 5 feet, 1 inch, from the left rear and right rear wheels, respectively. The highway patrolman also testified that the speed limit on that particular section of road is 40 miles per hour. The evidence further indicated that there is a dip in that portion of U. S. 281 immediately south of the overpass over I-94, and that such portion of U. S. 281, immediately south of I-94, is not visible to persons on U. S. 281 from the north side of I-94.

In this appeal, the plaintiffs list ten specifications of error. One of these specifications goes to the scope of the voir dire examination of the jurors; four of the specifications go to rulings made by the trial judge in admitting testimony over the objection of the plaintiffs; four of the specifications go to instructions given by the court; and the final specification goes to the claim that the verdict was against the law and contrary to the evidence.

The first specification of error goes to the voir dire examination of the prospective jurors by the plaintiffs. The trial court sustained the defendants' objection to the plaintiffs' question to the prospective jurors when they attempted to ask them if there could be a lawsuit for $293,000, if damages in that amount were found to be present, or words to that effect. The specific question was not recorded. The plaintiffs sought $293,305.75 in damages.

Cases cited to this court by both the plaintiffs and the defendants support the proposition that the propriety of the questions asked of prospective jurors, during the voir dire examination, is to be regulated by the trial judge in the exercise of his discretion, and that no appeal from his decision will be allowed unless the trial court has clearly abused its discretion and prejudice has resulted. Murphy v. Lindahl, 24 Ill.App.2d 461, 165 N.E.2d 340, 82 A.L.R.2d 1410 (1960); Anno: Voir Dire Examination—Damages—Amount, 82 A.L.R.2d 1420; Loveland v. Nieters, 79 N.D. 1, 54 N.W.2d 533 (1952).

▉ Rule 47(a) of the North Dakota Rules of Civil Procedure grants the parties to a lawsuit the right to conduct a general examination of prospective jurors. In Loveland v. Nieters, *supra*, we held that a voir dire examination of a prospective juror must be conducted in good faith, and that

" * * * the adverse litigants should be given the right to inquire freely about the interest, direct or indirect, of the proposed juror, that may affect his final decision. The scope of inquiry is best governed by a wise and liberal discretion of the court, * * *"

In the present case the plaintiffs wanted to determine the jurors' reactions to the possibility of returning a verdict of $293,-000, if damages were found to that extent. We feel that the trial judge properly exercised his discretion when he sustained the defendants' objection to this question. Although some cases in other jurisdictions indicate that questions as to the dollar amounts of possible verdicts have been allowed, they have not been allowed as a matter of right but only as a matter of the court's discretion. Murphy v. Lindahl, *supra*; Greenman v. City of Fort Worth, 308 S.W.2d 553 (Tex.Civ.App.1958).

▉ Questions to the prospective jurors concerning the possible dollar amount of any verdict are inappropriate as they may tend to influence the jury as to the size of the verdict, and may lead to the impaneling of a jury which is predisposed to finding a higher verdict by its tacit promise to return a verdict for the amount specified in the question during the voir dire examination. Henthorn v. Long, 146 W.Va. 636, 122 S.E.2d 186 (1961); Paradossi v. Reinauer Bros. Oil Co., Inc., 53 N.J.Super. 41, 146 A.2d 515 (1958); Goldstein v. Fendelman, 336 S.W.2d 661 (Mo.1960). It is well within the trial court's discretion to sustain objections to such questions. Chambers v. Bradley County, 53 Tenn.App. 455, 384 S.W.2d 43 (1964).

The next four specifications of error relate to rulings of the trial court on the admission of evidence.

▉ Plaintiffs asked the Jamestown Chief of Police whether there "was any danger of him [the deceased officer] being fired by the Police Department?" The defendants objected on the ground that the question called for a conclusion and that no proper foundation had been laid. The trial court sustained the objection. Plaintiffs argue that it was improper to sustain the objection to this question as it was asked to show the pecuniary prospects of the deceased, which were necessary in establishing damages suffered by the plaintiffs. The court has held, on a number of occasions, that it is proper to consider the pecuniary prospects of a deceased in determining damages. Stejskal v. Darrow, 55 N.D. 606, 215 N.W. 83, 53 A.L.R. 1096 (1927); Schultz v. Winston & Newell Co., 68 N.D. 674, 283 N.W. 69 (1938); Umphrey v. Deery, 78 N.D. 211, 48 N.W.2d 897 (1951); Dahl v. North American Creameries, 61 N.W.2d 916 (N.D.1953); Quam v. Wengert, 86 N.W.2d 741 (N.D. 1957); Henke v. Peyerl, 89 N.W.2d 1 (N.D.1958); Merchants Nat. Bank & Trust Co. of Fargo v. United States, 272 F.Supp. 409 (D.C.N.D.1967). The objection to plaintiffs' question, we believe, was properly sustained as no proper foundation had been laid for the question and it called for a conclusion on the part of the witness. However, we note that, immediately after the objection had been sustained, the

plaintiffs asked the chief of police, "Was his job secure?", to which he responded, "Yes, it was so far as I know." Assuming that it was error for the trial court to sustain this objection, the error was not prejudicial.

Without objection, two witnesses called by the plaintiffs testified that the driver of the truck had stated to them shortly after the accident that, "I didn't see him coming", or words to that effect. However, plaintiffs' objection to a question asked by the defendants, on cross-examination, of the highway patrolman who investigated the accident, was overruled and he was permitted to testify to the effect that the defendant driver of the truck told him that he had stopped at the stop sign and then turned left to head south when he saw a motorcycle coming across the overpass of I-94; that the motorcycle had its brakes applied, and that it ran into the front of the left rear tandem of the trailer. Plaintiffs argue that it was prejudicial error to overrule this objection and to permit this testimony to be given as it was hearsay, was not part of the res gestae, and was a self-serving declaration.

■ The allegation that a statement is a "self-serving declaration" and, therefore, ought to be excluded is no longer a useful objection under modern rules of evidence. McCormick on Evidence notes that this exclusion

"* * * seems to have originated as a counter-part and accompaniment of the rule, now universally discarded, forbidding parties to testify [North Dakota has removed this disability and allows parties to testify. Section 31–01–01, N.D. C.C.].

"Actually the appropriate rule for the exclusion of a party's declarations offered in his own behalf as evidence of the truth of the facts declared is the hearsay rule." McCormick on Evidence, Section 275 (1954).

Accordingly, such a statement is to be excluded not because it is a "self-serving declaration" but because it is hearsay. It is to be admitted in evidence only if it comes within one of the recognized exceptions to the hearsay rule. McCormick on Evidence, Section 275 (1954); 29 Am. Jur.2d, Evidence, Sec. 621 and 622. One such recognized exception to the hearsay rule is the res gestae rule.

The plaintiffs' objection, then, to the highway patrolman's testimony as to what the defendant truck driver told him is that such testimony is hearsay and does not fall within the res gestae exception. If it does not fall within the res gestae exception, was its admission in evidence, over plaintiffs' objection, prejudicial error? This court has previously held that for a hearsay statement to come within the res gestae exception,

"* * * such declaration must appear to have been voluntarily and spontaneously made under the immediate influence of the principal transaction, and be so connected with it as to characterize or explain it, and made under such circumstances as to exclude the possibility of a design to misstate the facts." Myers v. Hagert Const. Co., 74 N.D. 435, 23 N. W.2d 29 (1946).

■ The statement in question was made to the highway patrolman approximately 45 minutes after the accident. Whether a particular statement is made "spontaneously" and "under the immediate influence" of the accident is a question which can be better determined by the trial judge, who has the opportunity to observe the witnesses and evaluate the evidence. Although the 45-minute delay involved weighs against "spontaneity" and "influence" of the accident, and although the statement in question can be read to contradict the declarant's previous statements, we cannot say, as a matter of law, that the trial court erred in admitting the hearsay statement under the res gestae exception. However, assuming that the trial court did err in this respect, we believe that such error was not prejudicial and would not require a

new trial. The jury had before it all of the evidence and was capable of judging the credibility of the witnesses and statements involved.

 The trial court also sustained the defendants' objection to plaintiffs' question asked of a Jamestown police officer, who had also driven the three-wheeled motorcycle which was involved in the accident. Based on his experience in driving it on I-94, he testified that it had a top speed of 55 miles per hour. He was then asked: "Did you reach 55? How long a distance if you opened the accelerator or stepped on the gas wide open, how long did it take you to reach 55?" This was objected to on the ground that the witness had tested its speed on a different highway and, therefore, it was irrelevant. Without citing any authority, plaintiffs claim that this ruling by the trial court was error as the performance characteristics of the motorcycle are important to rebut the defense that the deceased was speeding. We have reviewed the record and have found ample evidence that the motorcycle in question was capable of speeds up to 55 miles per hour such that an answer to this question would not rebut a defense of speeding. We also note that no material issue of fact involved the acceleration capabilities of the motorcycle. No offer of proof was made to show the relevancy of the answer.

 Where evidence is challenged as irrelevant, the test is whether it will reasonably and naturally tend to prove, or disprove, any matter of fact in issue. Bale v. Brudevig, 77 N.D. 494, 43 N.W.2d 753 (1950). There was no showing made that the answer would prove, or disprove, any fact in issue and, on the basis of the previous testimony of the witness that the motorcycle would go 55 miles per hour, we do not find that the court erred in sustaining the objection. The burden is on the plaintiffs, as appellants, to show that error occurred and they have failed to sustain that burden.

 The plaintiffs contend that it was prejudicial error for the trial court to allow the defendant truck driver, over the objection of the plaintiffs, to answer, in the negative, the question: "Have you ever had an accident before this one on August 31st, 1966?" This court has previously held that "evidence of reputation for care or lack of care or of proneness to accident is inadmissible on the issue of negligence." Thornburg v. Perleberg, 158 N.W.2d 188 (N.D.1968). *Thornburg* involved a similar question as to the defendant's driving record. We think that it was error to overrule the objection; however,

> "This court has held that declaring a mistrial is an extreme remedy, to be resorted to only when there is a fundamental defect in the proceedings of a trial or when something has happened during the trial which makes it evident that further proceedings would be productive of manifest injustice." Thornburg v. Perleberg, *supra*.

To declare a mistrial, in effect, results in a new trial. We believe that the question was improper, but in light of an examination of the entire transcript is not so prejudicial as to require the granting of a new trial. We find that, under all of the evidence, the answer did not affect the substantial rights of the parties to the action and was, therefore, harmless error under Rule 61, N.D.R.Civ.P.

 The plaintiffs specified that the trial court erred when it refused to give a requested instruction on the emergency doctrine. The record does not establish that the deceased took any evasive action to avoid a collision, except to brake his motorcycle. Although his motorcycle laid down skid marks for a distance of 76 feet, it did not stop in time to avoid a collision. No claim was made that it was negligence for the deceased to attempt to stop by applying the brakes. The defense of contributory negligence is based on a claim that the deceased was operating his motorcycle at an unlawful and unsafe speed. Evi-

dence was produced at the trial to show that the deceased was traveling from over 40 to 60 miles per hour where the posted speed limit was 40 miles per hour. It is also claimed that he failed to maintain a proper lookout, and that he was generally careless and reckless in the operation of his motorcycle.

■ There is no question but that an emergency arose; however, we have held that the emergency rule cannot be invoked where the emergency is caused, in part, by the person's own acts. Spielman v. Weber, 118 N.W.2d 727 (N.D.1963).

"The motorist is not, in such a case, made to assume responsibility for a mere error of judgment in failing to adopt the best means of escape from a sudden peril; he is held responsible for the original negligence on his part which placed him in peril, if such negligence contributed measurably to the happening of the accident." 7 Am.Jur.2d, Automobiles and Highway Traffic, Section 360.

For these reasons, we hold that it was not error for the trial court to refuse to give the requested instruction.

■■ Plaintiffs specify that it was error for the court to refuse, in connection with an instruction on contributory negligence, to give a requested instruction on the presumption of due care. The defendants admit the presumption but claim that it does not apply in this case as there were two eyewitnesses to the accident, both of whom testified at the trial. The plaintiffs argue that these were not credible eyewitnesses and that, therefore, the requested instruction should have been given. In support of their argument, the plaintiffs cite Quam v. Wengert, *supra*, in which this court held that it was proper to instruct on the rule that an inference of due care by an injured person at the time of a fatal injury may be drawn from the natural instinct of self-preservation where, under the circumstances, the eyewitness was the defendant who was traveling at 20 miles per hour and first saw the decedent when only four feet away, which gave the defendant less than half a second to observe him. This court held that this would not give the defendant time for observation as to whether the decedent was exercising due care. That case is not applicable here as the record indicates that the defendant, Nutz, observed the decedent for at least several seconds prior to the accident. In addition, another witness, Ted Meidinger, testified relative to the movement of both vehicles before the accident. The plaintiffs argue that this witness is not a credible witness and his testimony was not sufficient to remove the no eyewitness rule from the case. We have examined the testimony of this witness and find it does qualify him as an eyewitness and does remove the no eyewitness rule from the case. In substance, this witness testified that he was standing outside at a point east of the accident scene. He testified that he saw the truck come to a stop at the entrance to U. S. 281 on the north side of the overpass over I-94. At about the same time he saw the decedent on his motorcycle stopped at the entrance to U. S. 281, some distance south of the overpass on the approach road from the "pony farm." He saw both vehicles start up and move onto U. S. 281. He described to the jury the course of travel taken by the decedent on his motorcycle and stated that he saw him at all times except when he went through the "big dip", after he entered U. S. 281 and before he came up onto the overpass from the south. He estimated the speed at which the motorcycle was traveling and described its acceleration. He continued to watch until the accident occurred.

Considering the record, we conclude that there were eyewitnesses and that it was proper for the court to refuse to give the requested instruction.

■ Plaintiffs contend that the trial court committed prejudicial error when, as part of the instructions to the jury, it included an instruction on the statutory

rule of the road covering brakes on motorcycles. Plaintiffs contend that there was no evidence in the record to raise an issue of faulty brakes.

"* * * instructions must be determined by the pleadings and by the evidence in the record." Wall v. Zeeb, 153 N.W.2d 779 (N.D.1967).

Plaintiffs make no allegation that the pleadings were insufficient to support this instruction. After reviewing the evidence, we agree with the trial court that the lack of uniformity in skid marks made by the three-wheeled motorcycle supports the trial court's decision to instruct on the statutory requirements as to brakes on motorcycles, and that, as such, no error resulted from the giving of this instruction.

▮ Plaintiffs also assign that it was error to instruct on both contributory negligence and assumption of risk, contending that these instructions are repetitious and unduly emphasize the point. We agree that undue emphasis on a particular point in the instructions ought to be avoided. However, the trial court must instruct on those issues that have been pleaded and which have support by evidence in the record. Wall v. Zeeb, *supra*. The record and pleadings in this case indicate that both contributory negligence and assumption of risk were pleaded as separate affirmative defenses, and that sufficient evidence was produced at the trial in support of these allegations to warrant both instructions. In addition, a reading of the trial court's instructions does not indicate that these issues were unduly emphasized.

▮ The plaintiffs' final contention is that the evidence was insufficient to sustain a verdict of dismissal. We have said many times that it is a well-established rule that a motion for a new trial, on the ground of the insufficiency of the evidence to justify the verdict, involves the legal discretion of the trial court, to be exercised in the interests of justice, and that the trial court's decision will not be disturbed on appeal unless an abuse of discretion is clearly established. Linington v. McLean County, 161 N.W.2d 487 (N.D.1968); Grenz v. Werre, 129 N.W.2d 681 (N.D.1964); Stokes v. Dailey, 97 N.W.2d 676 (N.D.1959). We have examined the evidence and, on the facts disclosed by the record, find that the trial court did not abuse its discretion in denying the motion for a new trial as there is substantial evidence to sustain the verdict.

▮ The plaintiffs also challenge the sufficiency of the evidence to sustain the verdict in their appeal from the judgment. In reviewing the sufficiency of the evidence on an appeal from a judgment, the credibility of the witnesses and the weight to be given to their testimony are ordinarily considered to be questions of fact for the jury to determine. Gleson v. Thompson, 154 N.W.2d 780 (N.D.1967); Degenstein v. Ehrman, 145 N.W.2d 493 (N.D.1966). Thus, in reviewing the evidence, we must consider it in the light most favorable to the verdict. Willard v. Owens, 164 N.W.2d 910 (N.D.1969); Christensen v. Farmers State Bank of Richardton, 157 N.W.2d 352 (N.D.1968). It is only when the evidence is such that reasonable men can draw but one conclusion therefrom that the questions of negligence, proximate cause, contributory negligence and assumption of risk become questions of law for the court. Willard v. Owens, *supra*. We have reviewed the evidence in this case, applying the rules set forth above, and find that there is substantial evidence to sustain the verdict of the jury.

For the reasons set forth above, the judgment and order denying the motion for a new trial are affirmed.

STRUTZ, ERICKSTAD, PAULSON, and KNUDSON, JJ., concur.