Robert E. HAIDER, Plaintiff-Appellant,

v.

Wilmar FINKEN, Defendant-Appellee.

Civ. No. 9176.

Supreme Court of North Dakota.

March 3, 1976.

Zuger & Bucklin, Bismarck, for appellant; argued by Leonard H. Bucklin, Bismarck.

Vogel, Vogel, Brantner & Kelly, Fargo, and Farhart, Rasmuson, Olson & Lian, Minot, for appellee; argued by C. Nicholas Vogel, Fargo.

PAULSON, Judge.

This is an appeal by the plaintiff, Robert E. Haider [hereinafter Haider], from a judgment entered pursuant to a jury verdict of the Ward County District Court dismissing Haider's amended complaint against the defendant, Wilmar Finken [hereinafter Finken]; and also an appeal from the trial court's order denying Haider's motion for a new trial. In this action, recovery is sought from Finken for personal injuries sustained by Haider in an October 9, 1972, motor vehicle accident.

Haider's amended complaint is predicated on his assertion that Finken was negligently and willfully operating in an unlawful manner a farm tractor which was towing an overwidth cultivator on State Highway No. 53, after sunset on the date in question, and that such action by Finken was the proximate cause of a collision between the automobile being driven by Haider and the rear of Finken's towed cultivator, in which collision Haider was injured. Finken contends, however, as an affirmative defense, that Haider was himself contributorily negligent [1] in that he failed to maintain a proper lookout, that he was driving at an excessive speed, and that he failed to have his automobile under control, thereby barring any recovery.

The accident occurred sometime after sunset (which was at 7:09 p. m.) on the evening of October 9, 1972, in the eastbound lane of State Highway No. 53, a two-lane blacktopped rural highway. The exact time of the accident, as well as the extent of visibility at such time, is in dispute. Testimony indicates that the accident occurred sometime between 7:30 and 7:45 p. m. CDT.

Finken, after completing his day's field work, entered State Highway No. 53 with his tractor-cultivator unit and was traveling east on the south lane of the highway at about six miles per hour. The cultivator was sixteen feet wide, but while being towed was in the raised position, so that it did not project into the north, westbound, lane. The top of the cultivator was about three feet above the road's surface. Finken had the tractor headlights burning. In addition, he also had a white field light burning, which was mounted on the left rear fender of the tractor. Such light is a

---

1. This cause of action arose before the effective date of § 9–10–07, N.D.C.C. [S.L.1973, ch. 78, § 1], which adopted the doctrine of comparative negligence. Consequently contributory negligence was an available defense in the instant case.

sealed-beam light, smaller than a headlight, and normally is used for illuminating machinery and work areas at night. There were no lights or reflectors of any kind on the cultivator, nor was there a triangular "slow-moving vehicle" sign mounted on the cultivator. There was, however, a "slow-moving vehicle" sign mounted on the rear of the tractor.

At the scene of the accident, State Highway No. 53 is a straight, level blacktop road, with a traveled mat between 36 and 38 feet wide. At the time of the accident, the road surface was dry, there was no loose gravel on the asphalt pavement, and the weather was clear. Approximately one-half mile west of the accident scene is the crest of a small rise, and there is also a slight rise in the road some distance to the east of the accident scene.

The Haider vehicle was also traveling in an easterly direction, in the south lane of traffic on Highway No. 53. The Haider vehicle collided with the rear of the towed cultivator about one foot to the left of its center. The Haider vehicle left skid marks of 59 feet 6 inches on the highway before colliding with the cultivator. The impact point on the cultivator was 6 feet 8 inches from the south edge of the traveled mat of the roadway. The tractor wheels also left skid marks on the highway's surface after impact. The car continued forward after impact for about 30 feet, leaving gouge marks and additional skid marks on the highway. The right rear tire of the Haider vehicle came to rest about 21 feet 3 inches east of the impact point. The tractor continued traveling forward, angling into the south ditch about 89 feet from the impact point. The entire front of the Haider vehicle was demolished, and the cultivator extensively damaged.

The accident was reported to the State Radio Communications office in Bismarck at 7:46 p. m. CDT by Finken's wife. Such report was made after Finken had regained consciousness, had walked to his farm house (which is located about one-fourth of a mile north of the accident scene), and, although still somewhat dazed, had indicated to his wife that there were injured people at the accident scene and told her that the police should be called.

Haider and his wife, who was a passenger in the Haider vehicle, were both knocked unconscious in the accident, and both suffered from retrograde amnesia, even at the time of the trial. Consequently, neither was able to testify as to the events immediately preceding or following the accident.

The case was tried to a jury on the theories of negligence and contributory negligence, and the jury returned a verdict in favor of Finken, dismissing Haider's amended complaint. Haider thereafter moved for a new trial, on· grounds which are substantially the same as those presented for our review on this appeal. After the denial of such motion, Haider appealed.

The issues which Haider presents for our consideration in this appeal are as follows:

1. Did the trial court give an "assured clear distance" instruction, and, if so, did the trial court err in giving such instruction?

2. Did the trial court err in refusing to give Haider's requested instruction on the sudden emergency doctrine?

3. Did the trial court err in refusing to give Haider's requested instruction that contributory negligence would not bar Haider's recovery if Finken intentionally violated statutes governing the lighting requirements and for the operation of farm equipment on the State's highways?

4. Did the trial court err in admitting testimony regarding the number and ages of Finken's children?

5. Did the trial court err in refusing to admit testimony regarding Haider's habit of dimming his automobile headlights when meeting oncoming traffic?

6. Did the trial court err in refusing to give Haider's requested instruction that there is a presumption that a person with retrograde amnesia was acting with due care?

### I.

Haider's first contention is that the emphasized portion of the following jury instruction given by the trial court invokes the "assured clear distance" rule:

"OPERATION OF MOTOR VEHICLE

"It is the duty of every driver to exercise ordinary care in the operation of a motor vehicle, and, while exercising such care, *to drive it at such speed and in such manner as to be able to avoid colliding with other persons and objects upon the roadway.* The care required must be measured by reference to the surrounding circumstances and the risks or danger known to the driver at the time of the act in question or that would have been known to him had he exercised ordinary care.

"While driving his vehicle upon a highway, a driver must not only see what is in plain sight, but he is expected to see any object within the ordinary range of his vision if it would have been seen by a reasonably prudent person while exercising ordinary care under similar circumstances.

"While it is the duty of every driver to be alert and keep a lookout for other vehicles, obstructions and other obvious dangers, he has the right to assume, in the absence of an awareness to the contrary, that others using the highway in common with him will exercise ordinary care to avoid injuring him and he is not negligent in acting on such assumption. *Of course, the driver of a motor vehicle cannot assume that his course of travel is free of other vehicles, obstructions or dangers at times when the required range of his vision is impaired.*" [Emphasis added.][2]

Based upon such contention, Haider thereupon argues that this State should abandon reliance upon the assured clear distance rule, asserting that such rule impinges upon the proper role of the jury in determining what type of conduct is negligent.

■ In reviewing the propriety of jury instructions given by the trial court, we adhere to the rule that instructions to the jury must be considered in their entirety. If the effect of the whole is to outline the issues in the case fairly and correctly, an isolated improper statement contained therein will not be considered prejudicial error. *Perleberg v. General Tire and Rubber Co.,* Syll. ¶ 1, 221 N.W.2d 729 (N.D. 1974); *Leake v. Hagert,* Syll. ¶ 4, 175 N.W.2d 675 (N.D.1970); *Willert v. Nielsen,* Syll. ¶¶ 1 and 2, 146 N.W.2d 26 (N.D.1966); *Grenz v. Werre,* 129 N.W.2d 681 (N.D.1964).

In *Grenz v. Werre, supra* 129 N.W.2d at 683, this Court held in paragraph 11 of the syllabus that:

"Though an instruction standing alone may be insufficient or erroneous, it must be considered in connection with remainder of charge, and if whole charge taken together correctly advises jury as to the law, the error, if any, is thereby cured."

In the instant case, Haider contends that the instruction hereinbefore set forth is erroneous only because it invokes the assured clear distance rule, thereby removing, Haider asserts, the question of the reasonableness of Haider's conduct from the jury's consideration.

■ We have carefully examined the instruction set forth above, as well as the trial court's other instructions on the issues of negligence and contributory negligence, and conclude that the instruction set forth above does not invoke the assured clear distance rule. Replete throughout the trial court's instructions to the jury in the instant case is the view that, within certain parameters, the jury's duty is to determine the reasonableness of the conduct of both parties.

---

2. This instruction is adopted from North Dakota Jury Instruction No. 201 (SBAND 1966).

In *Leake v. Hagert, supra* 175 N.W.2d at 688, this Court approved the following assured clear distance instruction given in a case factually quite similar to the instant case:

" '5(3) * * * The rule of safety is the rule that one must drive at such a speed as to be able to stop within the assured clear distance ahead. The word "Assured" means with reasonable certainty rather than absolute certainty. In order to comply with this rule, the driver of a motor vehicle must not operate it at a greater speed than will permit him to bring it to a stop within the distance between his vehicle and a discernible object obstructing his path or line of travel. The distance that a driver can see ahead of him is shortened at night in the dark, and *he should therefore drive more slowly after nightfall, and must be able, as a general rule, to stop within the range of his headlights for such obstruction as an ordinarily careful driver would see.*' " [Emphasis added.]

In contrast to the above instruction specifically outlining for the jury the type of conduct that is considered reasonable, the trial court in the instant case instructed, in part, that:

"Of course, the driver of a motor vehicle cannot assume that his course of travel is free of other vehicles, obstructions or dangers at times when the required range of his vision is impaired."

Although Haider raises some question as to the emphasis placed on certain portions of such instruction, nonetheless, we believe that such instruction, when read as a whole, correctly advised the jury of the applicable law. Furthermore, unlike the assured clear distance instruction in *Leake, supra,* the instruction in the instant case did not attempt to definitize for the jury the type of conduct considered reasonable. On the contrary, in view of the conflicting evidence in the instant case as to the time the accident occurred and the extent of visibility at such time, we conclude that the court properly instructed the jury that it should determine whether or not Finken's tractor-cultivator unit was within Haider's required range of vision as Haider was driving his automobile. *King v. Railway Express Agency,* 107 N.W.2d 509, 514 (N.D.1961). We believe that the jury instructions given by the trial court, as a whole, properly framed this issue for the jury's consideration, and did not prejudicially invade the province of the jury on any question. Consequently, we find no prejudicial error in the instruction set forth above.

Having concluded that the language of the instruction set forth above did not invoke the assured clear distance rule in the instant case, we find it unnecessary to rule on Haider's contention that such rule should be abandoned in this State.

## II.

Haider's next contention is that the trial court erred in refusing to give Haider's Requested Instruction No. 2 on the sudden emergency doctrine, which stated:

### "SUDDEN EMERGENCY

"If a person is suddenly and unexpectedly confronted with an emergency or situation of peril, which involves impending danger or the appearance thereof to himself or to others and is not created by his own fault, he is not expected, nor required, to use the same judgment and prudence that is required of him in calmer and more deliberate moments. His duty is to exercise only the care that an ordinarily prudent person would exercise in the same situation. If at that moment he does what appears to him to be the best thing to do, and if his choice and manner of action are the same as might have been followed by an ordinarily prudent person under the same conditions, he does all the law requires of him, although, in the lights of afterevents, it appears that a different course would have been better and safer."

In *Tennyson v. Bandle,* 181 N.W.2d 687 (N.D.1970), this Court held, in paragraphs 2 and 3 of the syllabus, that:

"2. The doctrine of 'sudden emergency' is based upon the principle that a person suddenly confronted by a dangerous situation, whether it was created by the negligence of another person or by a condition not the result of his own negligence, is not held to the same accuracy of judgment as would be required of him if he had time for deliberation.

"3. Where a person who suddenly is confronted by a dangerous situation *not caused by his own negligence* exercises such care as an ordinarily prudent person would exercise in a like emergency, he is not liable for a resulting injury." [Emphasis added.]

In *Trautman v. New Rockford-Fessenden Co-Op Tr. Ass'n,* 181 N.W.2d 754 (N.D.1970), decided on the same day as *Tennyson v. Bandle, supra,* this Court held that it was not error for the trial court to refuse to give a "sudden emergency" instruction where the issue was not the driver's conduct after discovering that a collision was imminent, but, rather, the issue was the character of his conduct before evasive action was necessary. In *Trautman, supra,* 181 N.W.2d at 761–762, this Court said:

"The plaintiffs specified that the trial court erred when it refused to give a requested instruction on the emergency doctrine. *The record does not establish that the deceased took any evasive action to avoid a collision, except to brake his motorcycle.* Although his motorcycle laid down skid marks for a distance of 76 feet, it did not stop in time to avoid a collision. *No claim was made that it was negligence for the deceased to attempt to stop by applying the brakes. The defense of contributory negligence is based on a claim that the deceased was operating his motorcycle at an unlawful and unsafe speed.* Evidence was produced at the trial to show that the deceased was traveling from over 40 to 60 miles per hour where the posted speed limit was 40 miles per hour. *It is also claimed that he failed to maintain a proper lookout, and that he was generally careless and reckless in the operation of his motorcycle.*

"There is no question but that an emergency arose; however, we have held that the *emergency rule cannot be invoked where the emergency is caused, in part, by the person's own acts. Spielman v. Weber,* 118 N.W.2d 727 (N.D.1963).

" 'The motorist is not, in such a case, made to assume responsibility for a mere error of judgment in failing to adopt the best means of escape from a sudden peril; he is held responsible for the original negligence on his part which placed him in peril, if such negligence contributed measurably to the happening of the accident.' 7 Am. Jur.2d, Automobiles and Highway Traffic, Section 360.

"For these reasons, we hold that it was not error for the trial court to refuse to give the requested instruction."

Although it is correct, as Haider asserts, that it is for the jury to determine whether or not a sudden emergency in fact exists (*Tennyson v. Bandle,* Syllabus ¶ 4, *supra*), such an instruction is proper only where there is evidence tending to show that the claimed emergency was not caused or contributed to by the driver seeking to invoke the sudden emergency doctrine. Annotation: Sudden Emergency Instruction §§ 19–24, 82 A.L.R.2d 5, 60–66. Consequently, such an instruction is properly refused where there is evidence that the claimed emergency was caused or contributed to by inattention or lack of vigilance on the part of the driver seeking to invoke the rule (Annotation: Sudden Emergency Instruction § 20, 82 A.L.R.2d 5, 61); or where there is evidence that the driver failed to anticipate the peril or to take preventive action (Annotation: Sudden Emergency Instruction § 21, *supra* at 62); or where the vehicle was operated at an excessive or illegal speed at or immediately prior to the

accident (Annotation: Sudden Emergency Instruction § 22, *supra* at 63).

■ In the instant case, Finken contends, and introduced evidence tending to show, that Haider failed to maintain a proper lookout, was driving at an excessive speed at or immediately prior to the accident and failed to have his vehicle under control. Such evidence raises the issue of the character of Haider's conduct prior to the point in time at which it became necessary for him to take evasive action to avoid colliding with Finken's tractor-cultivator unit. There is no issue raised that Haider's conduct *after discovering the peril* was negligent and contributed to the cause of the accident. Consequently, like the situation discussed in *Trautman,* the trial court properly refused to instruct the jury on the sudden emergency doctrine. We therefore find no error in the trial court's refusal to so instruct the jury.

### III.

Haider's third contention is that the trial court erred in refusing to instruct the jury as follows:

*Haider's Requested Instruction No. 6:*

### "PRESUMPTION OF UNLAWFUL INTENT

"Members of the jury, you are instructed that there is a presumption in this state that an unlawful act was done with an unlawful intent. Therefore, if you find that either driver did an unlawful act and violated the statutes of this state, you may find that this was done with an unlawful intent."

*Haider's Requested Instruction No. 11:*

### "SAFETY EQUIPMENT VIOLATION AS NEGLIGENCE PER SE

"If you find that Defendant Wilmar Finken was operating equipment upon the public highway without the proper lights or reflectors required by statute, then you will find Wilmar Finken guilty of negligence unless he has proved a legal excuse.

"By the term 'legal excuse' is meant:

"1. Anything that would have made it impossible to comply with the statute.

"2. Anything over which he had no control which caused the violation.

"3. Anything which created an emergency not of his own making and by reason of which emergency he failed to obey the statute.

"4. Where a statute specifically provides an excuse or exception to the requirements of the statute."

*Haider's Requested Instruction No. 16:*

### "EFFECT OF INTENTIONAL MISCONDUCT UPON DEFENSE OF CONTRIBUTORY NEGLIGENCE

"Members of the jury, if you find that defendant Wilmar Finken intentionally violated statutes regarding what equipment he was supposed to have upon the roadway then in that event ordinary negligence, if any, of Robert Haider would not in any way bar a recovery by plaintiff Robert Haider."

The essence of Haider's position supporting such instructions is that Finken's action in driving his tractor-cultivator unit on the highway was in violation of certain safety statutes,[3] and that, therefore, enough evidence had been presented from which the jury could conclude that Finken's conduct was akin to an intentional tort, hence permitting Haider to recover from Finken even though Haider's own negligence contributed to the cause of the collision.

The doctrine that Haider would have us adopt is outlined, according to Haider, in

3. N.D.C.C. §§ 39–21–15, 39–21–16, and 39–21–09 [lighting violations]; § 39–12–04 [illegal operation of equipment on highway after sunset]; § 39–21–04 [towing without proper lighting].

§§ 482 and 500 of Volume 2, Restatement of Torts 2d (1965), wherein it is stated that:

"§ 482. *Reckless conduct*

"(1) Except as stated in Subsection (2), a plaintiff's contributory negligence does not bar recovery for harm caused by the defendant's reckless disregard for the plaintiff's safety.

"(2) A plaintiff whose conduct is in reckless disregard of his own safety is barred from recovery against a defendant whose reckless disregard of the plaintiff's safety is a legal cause of the plaintiff's harm.

"§ 500. *Reckless Disregard of Safety Defined*

"The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent."

Haider's assertion, however, fails to properly place the application of the above doctrine in the proper perspective. Section 483 of the Restatement of Torts 2d, *supra*, states:

"§ 483. *Defense to Violation of Statute*

"The plaintiff's contributory negligence bars his recovery for the negligence of the defendant consisting of the violation of a statute, unless the effect of the statute is to place the entire responsibility for such harm as has occurred upon the defendant."

Adoption of the approach for which Haider argues would be a substantial departure from this Court's previous holdings in automobile accident cases. This Court has repeatedly held that the violation of a highway safety statute is evidence of negligence, not negligence per se. *Lacy v. Grinsteinner,* Syll. ¶ 7, 190 N.W.2d 11 (N.D. 1971); *Simon v. Woodland,* Syll. ¶¶ 1, 2, and 3, 179 N.W.2d 422 (N.D.1970); *Glatt v. Feist,* 156 N.W.2d 819 (N.D.1968); *Gravseth v. Farmers Union Oil Company of Minot,* 108 N.W.2d 785 (N.D.1961); *Erdahl v. Hegg,* 98 N.W.2d 217 (N.D.1959).

In *Simon v. Woodland, supra,* in paragraphs 1, 2, and 3 of the syllabus, this Court specifically held:

"1. A violation of the statutory rules governing highway traffic, including rules for lighting of vehicles, is evidence of negligence and is actionable negligence when such violation is the proximate cause of an accident.

"2. A driver who is operating a tractor on a highway between sunset and sunrise and towing a haystack mover which is more than 8 feet wide has violated § 39-12-04, N.D.C.C., and this violation is evidence of negligence.

"3. Operating a tractor on a highway at night and towing a haystack mover, the extreme left projection of which extends beyond the extreme left projection of the towing tractor, and failing to have the lamps or reflectors on the extreme left projection of the haystack mover as required by § 39-21-15, N.D.C.C., is evidence of negligence."

In determining whether or not to apply the "reckless conduct" doctrine to automobile accident cases, it is instructive to review the Comments to §§ 483 and 500 of the Restatement of Torts 2d, *supra,* wherein it is stated, in pertinent part, as follows:

"*Comment:* [to § 483, at pp. 538–539]

"*a.* . . .

"*b.* Where the defendant's negligence consists of the violation of a statute, an ordinance, or an administrative regulation, and the action for negligence is based upon such a violation, the contributory negligence of the plaintiff ordinarily bars his recovery, as in the case of any other negligence of the defendant. Thus where, in violation of a number of different statutory provisions, the defendant is

driving his automobile at an excessive speed, the plaintiff's contributory negligence in failing to exercise, for his own protection, care to avoid a collision will bar his recovery. The fact that the defendant is aware that he is violating the statute, and intends to do so, does not make his conduct intentional as to the harm to the plaintiff . . .. It may, however, apart from the statutes, be in intentional disregard of the high degree of risk of harm to the plaintiff, and so amount, at common law, to reckless conduct under the rules stated in §§ 500 and 503. In that case the plaintiff's contributory negligence will not bar his recovery.

"c. There are, however, exceptional statutes which are intended to place the entire responsibility for the harm which has occurred upon the defendant. A statute may be found to have that purpose particularly where it is enacted in order to protect a certain class of persons against their own inability to protect themselves. Thus a statute which prohibits the sale of firearms to minors may be clearly intended, among other purposes, to protect them against their own inexperience, lack of judgment, and tendency toward negligence, and to make the seller solely responsible for any harm to them resulting from the sale. In such a case the purpose of the statute would be defeated if the contributory negligence of the minor were permitted to bar his recovery.

"It is not within the scope of this Restatement to state the various types of statutes which have been enacted for such a purpose, nor the principles of statutory construction by which the purpose of a particular statute is to be determined.

"d. Even where those for whose benefit the statute is enacted may be expected to be, and are in fact, fully able to protect themselves, it may still be found that the purpose of the legislation is to relieve them of the burden of doing so, and to place the entire responsibility for avoid-ing the harm upon the defendant. Thus a statute requiring railways to fence their tracks for the protection of livestock may be found to be intended to relieve adjoining landowners of the necessity of fencing in or otherwise restraining their cattle, even though they do not lack the ability to do so. Such contributory negligence is not a defense where the action is founded upon the violation of such a statute.

. . . . . ."

"Comment e.: [to § 500, at pp. 589–590]

"e. Violation of statute. The mere fact that certain precautions are required by a statute rather than the common law does not of itself make the intentional omission of the statutory precaution reckless indifference to the safety of others. In order that the breach of the statute constitute reckless disregard for the safety of those for whose protection it is enacted, the statute must not only be intentionally violated, but the precautions required must be such that their omission will be recognized as involving a high degree of probability that serious harm will result. Thus, the violation of an antiquated speed limit, set by statute at a rate which is today customarily regarded as not particularly dangerous or unsafe, may constitute negligence but cannot amount to reckless misconduct."

■ We do not believe that the conduct of Finken in the instant case falls within the scope of the doctrine outlined above. The statutes which Haider claims were violated by Finken in the instant case are not "exceptional statutes which are intended to place the entire responsibility for the harm" upon Finken. Neither are the violations of the safety statutes as outlined in this case such that there is a "high degree of probability" that serious harm would result from the failure of a person to comply with the requirements of such statutes.

We therefore adhere to the prior decisions of this Court, and hold that statutory

violations, if proved, are evidence of negligence. Consequently, the trial court did not err in refusing to give Haider's Requested Instructions Nos. 6, 11, and 16.

## IV.

■ Haider's fourth contention is that the trial court erred in permitting Finken's wife to testify, over objection, as to the names and ages of the Finken children. It is Haider's contention that such testimony was only offered in an attempt to prejudice the minds of the jury, by emphasizing to the jury that Haider and his wife were divorced, but that Finken's family, in contrast, was still intact.

This Court considered the question of the admission of irrelevant evidence intended to prejudice the minds of the jury in the case of *Larson v. Meyer*, 135 N.W.2d 145 (N.D. 1965), in which it was held that the admission of a Christmas photograph of the deceased, her husband and her children, in an action for wrongful death, was prejudicial error. The Court, in *Larson, supra*, 135 N.W.2d at 158, said:

"There was no dispute as to the identity of the deceased, nor was there any dispute as to her health or physical condition. Just what the purpose was of offering in evidence this Christmas card photograph is not apparent from the record. We can only assume it was to get before the jury a matter not germane to the issues and thereby arouse sympathy, passion, and prejudice in the minds of the jury."

In *Larson*, the Court placed special emphasis in reaching its conclusion on the fact that the photograph, introduced into evidence as an exhibit, was in the nature of a Christmas greeting, and that the trial of the suit was being conducted just before Christmas. The Court concluded that the error was prejudicial and that the trial court had abused its discretion in admitting it into evidence.

In the instant case, we do not believe that the admission of Mrs. Finken's testimony about her children was of the same character as the Christmas card photograph admitted as an exhibit in *Larson*. All that is in the record is her testimony about the names and ages of the children. No emphasis was placed upon such testimony by the court or counsel, and no exhibit which the jury could examine during its deliberations was admitted into evidence. It was already clear to the jury from the testimony of both Haider and his former wife that they were divorced.

■ It is incumbent upon the party contesting the admission of evidence to show that the error complained of was prejudicial. *Gleson v. Thompson*, 154 N.W.2d 780, 788 (N.D.1967). Having determined that the admission of Mrs. Finken's testimony regarding the children was not prejudicial, such error is not grounds for the granting of a new trial. Rule 61, N.D.R.Civ.P.

## V.

Haider's next contention is that the trial court erred in excluding testimony by Haider's wife that Haider was in the habit of dimming his automobile headlights when meeting an oncoming vehicle.

This Court considered the question of the admissibility of habit evidence in the case of *Glatt v. Feist*, 156 N.W.2d 819 (N.D. 1968), where the Court concluded that evidence of an injured person's habit of jaywalking across a city street should have been admitted. Because the opinion in *Glatt* effectively summarizes the approach to the question of the admissibility of testimony about a person's habits, we quote extensively therefrom, as follows, *Glatt, supra* 156 N.W.2d at 825–826, 828:

"Habit means a course of behaviour of a person regularly repeated in like circumstances. It describes one's regular response to a repeated specific situation. It is the person's regular practice of meeting a particular kind of situation with a specific type of conduct. 1 Jones,

Evidence (5th Ed.) Sec. 191; McCormick, Evidence, Hornbook Series, p. 340.

"The law governing this class of evidence is far from harmonious. The weight of authority seems to uphold its use where there is an absence of eyewitnesses as to the fact in controversy. This is a matter of first impression in this state since statehood. However, in the territorial case of *Elliott v. Chicago, M. & St. P. Ry. Co.*, 5 Dak. 523, 41 N.W. 758, 3 L.R.A. 363, wherein the territorial court held that where there were eyewitnesses of the occurrence causing the deceased person's death, the fact of his being a usually careful man is immaterial on the issue of the deceased person's contributing to the negligent act causing his death. The court said that however careful the deceased may have been generally would be of no avail to him if his negligence in fact contributed to the injuries, and however careless he may have been usually would not have been any defense to this action had he been free from negligence at the time the accident occurred.

"In two exhaustive annotations contained in 15 A.L.R. pp. 125–145 and 18 A.L.R. pp. 1109 and 1110, the writers have concluded: (1) with very few exceptions the cases hold that evidence of a careful habit of one injured by another's negligence is not admissible to show care on his part at the time of injury; (2) that circumstances which would admit evidence of habit of an injured person had been regarded as more numerous when the evidence was offered to prove his negligence than when offered to prove his care. But the general rule, supported by the weight of authority, is that such evidence is not admissible; (3) that if evidence of habit is irrelevant to the issue it is ordinarily not admissible even though it may throw some light on the question at issue; (4) if there are eyewitnesses to the occurrence in which a person is killed, evidence of the deceased's habits ordinarily is not admissible to show

either care or negligence on his part; and (5) the weight of authority is that if a person is killed in an accident to which there are no eyewitnesses, evidence of his habits is ordinarily admissible as tending to throw light upon his probable conduct at the time of an injury.

"It appears that most courts have held that evidence of habit in negligence cases is inadmissible. See McCormick, Evidence, pp. 325, 342; 1 Wigmore, Evidence, (3d Ed.) Secs. 65, 97; 1 Jones, Evidence, (5th Ed.) Secs. 191, 192; 9C Blash. Auto. Secs. 6190–6193; 32 C.J.S. Evidence § 582; and 29 Am.Jur.2d 303, 316, 317, 318 at [*sic*] 319.

"Generally, the text writers disagree with the courts on the question of whether evidence of habit should be admissible. They point out that, while evidence of reputation for care or lack of care, or evidence of a proneness for an experience free from accident is not admissible on the issue of negligence, the habit of a person charged with negligence may be relevant and should be admitted. 1 Jones, Evidence, (5th Ed.) Sec. 191, p. 332; McCormick, Evidence, Habit and Custom, Sec. 162, p. 340. In 1 Wigmore, Evidence, (3d Ed.) Sec. 97, p. 530, the author says:

"'Negligence is, in one aspect, the not-doing of a particular act; but in another and more correct aspect, it is the doing of one act in a manner which amounts to negligence in that some other act is omitted which ought to have accompanied it. There is no reason why such a habit should not be used as evidential,—either a habit of negligent action or a habit of careful action:'

"The main argument which seems to prevail with the authorities excluding habit evidence is the fact that it introduces into the trial collateral issues of fact of which the opposing party has had no notice. Although the decisions of the courts in various jurisdictions have been

far from uniform, *most courts have held that evidence of habit for care or lack of care is inadmissible to prove care and freedom from carelessness. Thus it is generally held that one cannot establish a standard of care for the measurement of his own conduct on the occasion in question by showing that he has used care under similar circumstances on former occasions. However, evidence of habit of the person injured when such evidence is offered to prove his negligence, has been admitted more often than where such evidence of habit is offered to show his exercise of care. Most courts however, allow evidence of habit in cases where there are no eyewitnesses to the accident."* [Emphasis added.]

.    .    .    .    .    .

"We stated earlier in this opinion that the course taken by the plaintiff in crossing Main Street on the particular day became an issue as a question of fact for determination by the jury. If the plaintiff crossed at the crosswalk, she had the right of way over the defendant's vehicle, but if she crossed at the point east of the crosswalk as contended by the defendant, the vehicle had the right of way. This is a critical issue in the trial. We believe that the rejected evidence was competent to go to the jury upon the theory that the plaintiff had been in the habit of crossing Main Street in returning from church at the point east of the crosswalk. The jury was entitled to consider that fact as tending to corroborate the evidence of the defendant who testified that she saw plaintiff at the time she was injured crossing at a point east of the crosswalk; that upon this question, there was direct conflicting evidence by the two parties who were adverse to each other and interested in the outcome of the action. The rejected evidence had some weight to show that the plaintiff's conduct at the time she was crossing Main Street was such as the defendant ascribed to her. It is not for the court to say what effect such evidence would have upon the minds

of the jury, but it being material and going into a vital question in the case, we find it was admissible, if proper foundation is first laid, and that it was error to keep it from the jury, being prejudicial to the defendant's case. Where such evidence of habit is offered on the issue of negligence, it must be limited to conduct which constitutes a person's regular practice of meeting a particular situation with specific conduct, thus showing that the doing of such act and the conduct of the person in meeting a certain situation were practically automatic. It must not be too remote in time or place of the events under investigation, which in this case is the accident in which the plaintiff was injured."

The evidence of habit which Haider seeks to offer in the instant case, however, is of a much different character than the evidence held admissible in *Glatt*. Here, Haider seeks to prove his exercise of due care by showing that his conduct in dimming his automobile's headlights—if we assume that it was dark and that he did, indeed, dim his headlights—was reasonable. Consistent with the holding of most courts that such evidence is not admissible to prove care or freedom from carelessness, *Glatt v. Feist, supra,* we conclude that the trial court did not err in refusing to admit the testimony of Haider's wife that Haider was in the habit of dimming his automobile headlights when meeting oncoming traffic.

### VI.

Haider's final contention is that the trial court erred in refusing to give the following instruction:

*Haider's Requested Instruction No. 5:*

"PRESUMPTION OF ORDINARY CARE

"If you find that the plaintiff in this case, as a result of the accident in question, suffered a loss of memory so as to be unable to testify as to his conduct at

the time of and immediately preceding the accident here in question, then I instruct you that the law presumes the plaintiff, in his conduct at the time of and immediately preceding the accident, was exercising ordinary care."

It is Haider's contention that because an injured person suffering from retrograde amnesia is presumed to have been exercising ordinary care at the time of the accident in question, the refusal of the trial court to specifically instruct the jury on such presumption was error.

However, the trial court, in instructing the jury on the issue of negligence, stated:

"A person is presumed to have performed his duty and to have exercised ordinary care, unless the contrary is shown by the greater weight of the evidence."

Such instruction is derived from § 31–11–03(4), N.D.C.C., which provides:

"*Disputable presumptions.*—All presumptions other than those set forth in section 31–11–02 are satisfactory if uncontradicted. They are denominated disputable presumptions and may be contradicted by other evidence. The following are of that kind:

.    .    .    .    .

"4.    That a person takes ordinary care of his own concerns."

In *Thompson v. Nettum,* 163 N.W.2d 91 (N.D.1968), this Court concluded that the presumption of ordinary care set forth in § 31–11–03(4), N.D.C.C. extended to cases where the injured party was suffering from retrograde amnesia at the time of trial. This Court held in *Thompson, supra,* at paragraph 2 of the syllabus, that:

"2.    In an action alleging negligence, it is presumed that an injured party was exercising ordinary care and diligence and obeying the law where the injured party has suffered retrograde amnesia from injuries sustained in the accident and there were no eyewitnesses."

It is clear from the record that such a presumption was raised and applies to the evidence adduced at trial in the instant case. However, that does not mean that the trial court was obliged to give Haider's requested instruction to the jury. In *Gravseth v. Farmers Union Oil Company at Minot,* 108 N.W.2d 785 (N.D.1961), this Court held, in paragraph 11 of the syllabus:

"11.    Where court's instructions were sufficiently broad to properly cover subject matter of requested instruction not given, court need not pass on correctness of requested instruction."

In the instant case, the trial court did instruct the jury that the presumption set forth in § 31–11–03(4), N.D.C.C. applied. We do not believe that the trial court is required to specifically instruct the jury on the presumption which arises where an injured party suffers from retrograde amnesia at the time of trial. There is no question but that the trial court's instruction in the instant case on the ordinary care presumption was a correct statement of the law. The trial court is under no duty to give two instructions on the same point of law. Consequently, we find no error in the trial court's refusal to give Haider's Requested Instruction No. 5.

Having reviewed all of the issues presented by Haider for our consideration in this appeal, and having found therein no grounds upon which a new trial need be granted, both the judgment of the district court and the order denying motion for a new trial are affirmed.

ERICKSTAD, C. J., and PEDERSON and SAND, JJ., concur.

VOGEL, Justice, concurring in part and dissenting in part.

I dissent from the holding of syllabus paragraph 6, and concur in the result in this case.

As the losing attorney in *Glatt v. Feist,* 156 N.W.2d 819 (N.D.1968), and therefore perhaps biased, I thought the decision in that case was wrong in principle and would

**522**

create difficulties and injustice in practice. I still do.

The portions of the *Glatt* opinion quoted in the opinion of the court now, show that the view adopted in *Glatt* was the minority rule. There are good reasons why it should be a minority rule. One is that evidence of habit introduces collateral issues of prior conduct which should be excluded.

The opinion of the court in the present case takes a comment in the *Glatt* case (that "evidence of habit of the person injured when such evidence is offered to prove his negligence, has been admitted more often than where such evidence of habit is offered to show his exercise of care") and elevates that passing comment into a rule (syllabus ¶ 6) that evidence for care, if there is no eyewitness, is inadmissible. Couple this with the holding of *Glatt* that evidence of habit of lack of care was admissible, and we now have a rule that one can prove lack of care, but not care, by evidence of habit. I submit that this has no support in case law, and certainly none in fairness or logic. It means that evidence of habit can be used against plaintiffs, but not for them. I cannot agree.

I would point out, too, that the *Glatt* case involves testimony by eyewitnesses, and therefore does not support the no-eyewitness language of the opinion in this case. Parties *are* considered eyewitnesses, even though interested, unless their testimony is precluded by a dead-man's statute, husband-wife privilege, or the like. See Annot., 29 A.L.R.3d 791, 804 (1970).

Finally, I think the rule of *Glatt* is inconsistent with the holding of *Thornburg v. Perleberg*, 158 N.W.2d 188 (N.D.1968), decided only 45 days after *Glatt*. Any attempted distinction based on differences between "habit" and "reputation" for care are too exotic to be workable in practice.

I would prefer to overrule the holding of *Glatt*. However, since *Glatt* is distinguished in the majority opinion and therefore not followed, and the evidence of habit is excluded, I concur in the result.

Even the adoption of a rule generally admitting evidence of habit would be preferable to the rule derived from combining the holdings of *Glatt* and the case now before us. At least such a rule has the merit of treating both sides equally.

With regard to syllabus paragraph 7, while I agree with the general principle stated and that the general instruction as to due care can be considered a substitute for the more specific instruction requested as to the presumption of due care of one suffering from retrograde amnesia, I think it is a rather poor substitute and hereafter it would be preferable to give the instruction specifically referring to retrograde amnesia.